### Evelyn P. Hixson v. Ralph Eric Plump

[704 A.2d 1159]

No. 96-578

Present: Amestoy, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed October 24, 1997

*J. Eric Anderson*, Manchester Center, for Plaintiff-Appellee.

*Philip M. Johnson*, Taftsville, and *Norman E. Watts*, Woodstock, for Defendant-Appellant.

**Amestoy, C.J.** Ralph Plump appeals a Windsor Family Court order that he pay $1,000 per month to Evelyn Hixson, his former spouse and the mother of their two children. Plump argues that (1) under applicable New York and Vermont statutes of limitations, the court lacked authority to enter such an order, and (2) the court erred by ordering monthly payments without entering judgment for the total amount owed by him to Hixson. We affirm.

Defendant Ralph Plump and plaintiff Evelyn Hixson married in New York State in 1959. The couple's two children were born in 1960 and 1961. The parties divorced in 1973, and under the terms of the divorce order, defendant was to pay child support to plaintiff, who retained custody of the two minor children.

In 1981 plaintiff sued defendant in New York's Supreme Court to collect past-due child support. Defendant made a personal appearance, but later ceased participation in the litigation. In 1984, the New York Supreme Court rendered a default judgment ordering defendant to pay plaintiff a total of $63,371.81 for child support arrearages, accumulated interest, and costs. Defendant did not appeal the judgment.

As of 1990, defendant had made no payments on the 1984 judgment and had also moved his residence to Vermont. In April 1990, plaintiff came to Vermont and sued in Windsor Superior Court to domesticate the 1984 New York judgment.[1] Defendant signed a stipulation for judgment "in the amount of $96,642.02 as of January 27, 1990, together with interest at the legal rate of twelve (12%) percent per annum accruing from that date forward." The court entered judgment for plaintiff on those exact terms.

Plaintiff thereafter made several unsuccessful attempts to collect money from defendant pursuant to the 1990 Vermont judgment. In 1992 she filed a motion for trustee process in an attempt to secure defendant's goods and, in 1993, she moved the Windsor Family Court to compel discovery of defendant's financial records. Twice in 1994 the court found defendant in contempt of court orders relating to this litigation.

In November 1995, continuing her effort to collect on the 1990 judgment, plaintiff filed motions in Windsor Family Court to hold defendant in contempt of court under 15 V.S.A. § 603 and to suspend defendant's automobile driver's license under 15 V.S.A. § 798. In its initial inquiry on the motions, the family court found that defendant had the ability to satisfy his financial obligation to plaintiff, but had theretofore neglected to pay the debt.

On the issue of contempt the court found that defendant's ability to pay the debt had not been previously determined by a tribunal, and

---

[1] In April 1990, actions involving child support were heard in superior court. The Legislature created the Vermont Family Court system to adjudicate child support and other matters of domestic relations filed or pending on or after October 1, 1990. 4 V.S.A. § 454.

that a contempt order was not appropriate in advance of such a finding. For the same reason, the court declined to suspend his driver's license. The court also interpreted the automobile license suspension statute as more appropriately applied in situations where defendant is required to make periodic payments, instead of a single payment as under the 1990 judgment. See 15 V.S.A. § 798(b) (suspension of operator's license appropriate where obligor fails to make payment on "one-quarter of the annual support obligation"). Accordingly, while the family court denied plaintiff's motions for contempt and license suspension, it nonetheless ordered defendant to pay plaintiff a minimum of $1,000 per month toward satisfaction of the 1990 Vermont judgment and accrued interest thereon.

Defendant's first argument on appeal to this Court is essentially a two-pronged challenge to the family court's order on the theory that relevant New York and Vermont statutes of limitations render the order unenforceable. We address these arguments in turn.

■ Defendant attempts a collateral attack on the New York judgment based on expiration of the applicable statute of limitation. "A collateral attack is 'one questioning the validity of a judgment in a proceeding which is not brought for the purpose of modifying, setting aside, vacating or enjoining the judgment.'" *Bennett Estate v. Travelers Ins. Co.*, 140 Vt. 339, 342, 438 A.2d 380, 382 (1981) (quoting *Burlington Data Processing, Inc. v. Automated Medical Systems, Inc.*, 492 F. Supp. 821, 822 (D. Vt. 1980)). Collateral attack is only appropriate when a party can demonstrate a want in the court's jurisdiction over the subject matter or the parties to the judgment, or a court has acted outside its statutory authority. *Id.* at 343, 438 A.2d at 382.

Defendant argues that the original 1984 New York judgment was void from its inception and therefore unenforceable in Vermont because New York's statute of limitations for enforcement of child support had expired by the time plaintiff brought her action in 1981. Defendant cites New York statutory and case law to establish that an action in New York for past-due child support must be brought within six years of accrual of the arrearages. He points out that plaintiff commenced her action approximately nine years after the 1973 divorce and concludes that New York courts lacked subject matter jurisdiction to hear the case.

■ Defendant's challenge to the 1984 New York judgment is without merit. Defendant waived any possible collateral attack on the judgment with his 1990 stipulation to judgment in Vermont superior

court. "A waiver is the intentional relinquishment or abandonment of a known right and may be evidenced by express words as well as by conduct." *Chimney Hills Owners' Ass'n v. Antignani*, 136 Vt. 446, 453, 392 A.2d 423, 427 (1978). A waiver "'involves both knowledge and intent.'" *Liberty Mutual Ins. Co. v. Cleveland*, 127 Vt. 99, 103, 241 A.2d 60, 63 (1968) (quoting *Beatty v. Employers' Liability Assurance Corp.*, 106 Vt. 25, 31, 168 A. 919, 922 (1933)).

The Windsor Superior Court found that on July 11, 1990, defendant signed a stipulation for judgment consenting to entry of judgment against him in plaintiff's favor for $96,642.02 plus interest accumulating at the annual rate of twelve percent. The 1984 judgment was the foundation for plaintiff's suit, and defendant's stipulation provided the basis for the Windsor court's order. He cannot now rescind his waiver and attack the earlier New York judgment underlying his stipulation. See *Town of Putney v. Town of Brookline*, 126 Vt. 194, 201-02, 225 A.2d 388, 393 (1967) (final judgment entered by consent and stipulation is just as conclusive on parties as if rendered after contest).

· ■ Moreover, even without defendant's waiver, the purported expiration of the applicable New York statute of limitations does not render the New York judgment invalid. In New York, as in Vermont, a statute of limitations is an affirmative defense that provides repose for a prospective defendant, and its expiration does not affect a court's jurisdiction to hear the case. See, e.g., *Duffy v. Horton Mem. Hosp.*, 488 N.E.2d 820, 822 (N.Y. 1985) (primary purpose of limitations statute is fairness to defendant); *In re Augenblick*, 488 N.E.2d 109, 110 (N.Y. 1985) (despite expiration of limitations period, failure to plead statute of limitations in answer or appropriate motion entitled opposing party to judgment on merits); see also V.R.C.P. 8(c) (statute of limitations must be pled as affirmative defense; otherwise, defense is waived). The proper avenue for defendant was appeal of the court's decision in New York, not subsequent attack in Vermont. *Miller v. A.N. Deringer, Inc.*, 146 Vt. 59, 60, 498 A.2d 501, 502 (1985).

Because the New York Supreme Court rendered a final judgment that was not appealed, and because defendant has stipulated to domestication in Vermont of that same judgment, we reject defendant's collateral attack on the 1984 New York judgment. As defendant himself correctly points out, we are bound to give full faith and credit to judgments from foreign tribunals with jurisdiction to render the judgment. U.S. Const. art. IV, § 1; *Poston v. Poston*, 160 Vt. 1, 4-5, 624 A.2d 853, 855 (1993).

Defendant's second statute of limitations argument challenges plaintiff's 1995 motions in Windsor Family Court to collect child support payments pursuant to the 1990 Vermont judgment. He contends that because the couple's youngest child reached her majority in 1983, 15 V.S.A. § 606(c) of Vermont's Child Custody and Support Statute bars plaintiff's recovery for child support arrearages after 1989. "An action to enforce a judgment under subsection (b) of this section may be brought no later than six years after the youngest child covered by the support order attains the age of majority . . . ." 15 V.S.A. § 606(c). Defendant acknowledges that this provision did not become effective until July 1, 1995, and that the superior court order was issued in 1990. He asserts, however, that plaintiff did not commence her action to enforce the 1990 judgment until November 1995, after the effective date of the legislation. By that time, defendant argues, more than a decade had passed since the couple's youngest child had reached the age of majority, and hence the action was long since time-barred.

Defendant misconstrues the applicability of § 606(c) to the action plaintiff has commenced. When, as here, a party seeks to enforce a previously rendered court order for payment of child support, the applicable provision is § 606(a). That section provides that a judgment by the family court — or in this case, the superior court, since family court had not yet been established — shall be "as binding and as enforceable in all respects as though rendered in any other civil action." 15 V.S.A. § 606(a). Thus plaintiff's 1995 motions in Windsor Family Court were, technically, motions to enforce a judgment, and not motions to enforce the terms of a child support order. Actions to enforce judgments by the court may be brought "at any time." *Id.*

Defendant's attempt to invoke the limitation on actions set forth in § 606(c) is unavailing. Section 606(b) provides that "any support payment or installment *shall become a judgment* on the day it becomes due for the purpose of calculating interest." 15 V.S.A. § 606(b) (emphasis added). Read together, subsections (b) and (c) establish a time limit for bringing actions on unpaid balances under the terms of divorce or separation agreements. Significantly, "judgments" arising under § 606(b) are amounts owed between the parties that have not been adjudged by a court. That type of judgment arising automatically by law contrasts markedly with a court order of the type obtained by plaintiff in 1990. When statutory language is clear

and unambiguous, the statute should be enforced according to its express terms. *Heisse v. State*, 143 Vt. 87, 89, 460 A.2d 444, 445 (1983). Accordingly, plaintiff was not time-barred in bringing her actions to enforce payment of the 1990 Vermont judgment.

Finally, defendant argues that the family court's 1996 order that he make monthly $1,000 payments to plaintiff was not appropriate under the statute because the court did not "render *judgment for the amount due* under the judgment or order." 15 V.S.A. § 606(a) (emphasis added). Defendant asserts that the monthly payments order is invalid because the court did not enter judgment on the *total* amount due. His argument is unpersuasive because the family court clearly based its order on the underlying 1990 Windsor Superior Court order. The family court specifically found that in 1990 the Windsor Superior Court had entered judgment against defendant in favor of plaintiff "in the amount of $96,642.02 plus interest of 12% per year." Based on that judgment of the total amount due, the family court ordered defendant to "immediately begin monthly payments to plaintiff towards the satisfaction of the June 1990 judgment and the accrued interest thereon at a minimum rate of $1,000.00 per month."[2] Defendant's stipulation to the 1990 judgment, and the court's entry of that judgment, gave him clear notice of the amount he owed plaintiff. See *Village of Morrisville Water & Light Dep't v. Town of Hyde Park*, 140 Vt. 615, 618, 442 A.2d 1288, 1289 (1982) (judgment in earlier action conclusive as to amount owed between parties); *MacGowan v. Gaines*, 127 Vt. 477, 481, 253 A.2d 121, 123 (1969) (actual notice exists when person sought to be affected by it knows of existence of particular fact in question). Inasmuch as defendant was on notice of the amount of his debt, he suffered no prejudice as a result of the family court's 1996 order.

*Affirmed.*

---

[2] The court's denial of plaintiff's motion for contempt does not render its underlying periodic payment order infirm. The contempt motion was predicated on defendant's failure to satisfy the 1990 judgment. The trial court was well within its discretion to forego the serious sanction of contempt even as it found it appropriate to order monthly payments on the earlier judgment. See *Hunt v. Hunt*, 162 Vt. 423, 648 A.2d 843 (1994) (in motion for contempt for failure to satisfy child support obligation, although contempt order not appropriate, order to make payment toward debt appropriate); *Randall v. Randall*, 129 Vt. 432, 435, 282 A.2d 794, 796 (1971) (motion for contempt in child support proceeding within discretion of trial court).