2012 VT 85

## In re Charles Crannell

[60 A.3d 632]

No. 11-039

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed October 19, 2012

*Charles Crannell*, Pro Se, Beattyville, Kentucky, Petitioner-Appellant.

*Ross Feldmann* of *Gravel and Shea, A Professional Corporation*, Burlington, Amicus Curiae for Petitioner.

*Matthew F. Valerio*, Defender General, *Anna Saxman*, Deputy Defender General, and *Dawn Matthews*, Prisoners' Rights Office, Montpelier, for Amicus Curiae Office of the Defender General.

¶ 1. **Burgess, J.** Appellant Charles Crannell appeals the decision of the Rutland Civil Division that he is no longer entitled to an appointed attorney to handle his post-conviction relief (PCR) proceedings. Appellant's previously assigned counsel filed a notice of withdrawal under 13 V.S.A. § 5233(a)(3), based on lack of legal merit in the PCR, a withdrawal which must be honored under *In re Bailey*, 2009 VT 122, 187 Vt. 176, 992 A.2d 276. *Bailey* held that, pursuant to an amendment to the statute, upon the Defender General's determination that a PCR claim was frivolous for lack of merit, a petitioner had no statutory right to assigned counsel at public expense. *Id.* ¶¶ 14-17. Appellant first argues that, having filed his PCR petition before the Legislature enacted the amended version of § 5233 that was interpreted in *Bailey*, he has a vested right to counsel under the pre-amendment version of the statute and this Court's earlier decision in *In re Gould*, 2004 VT 46, 177 Vt. 7, 852 A.2d 632, *superseded by statute*, 13 V.S.A. § 5233(a). *Gould* interpreted the prior version of § 5233 to entitle PCR petitioners to publically assigned counsel regardless of the petition's merit. *Id.* ¶¶ 19-21.

¶ 2. Assuming that *Bailey* and the current § 5233 do control, appellant alternatively claims that the Defender General's Office waived its right to withdraw because it represented him in his PCR proceedings for nine years before seeking to do so. Finally, assuming the same, appellant asserts that because counsel is

necessary for effective advocacy in PCR proceedings at the trial court level, this Court should read § 5233 to provide a right to assigned representation in such proceedings. Petitioner is correct that the old version of § 5233, as interpreted by *Gould*, still governs his right to assigned PCR counsel and grants him a statutory right to representation at his own, rather than the Defender General's, discretion. Accordingly, we reverse and remand.

¶ 3. Appellant was convicted of first-degree murder in 1995. His conviction was affirmed on direct appeal, and in 2001 he filed a PCR petition in Rutland Superior Court citing numerous grounds for relief, including the violation of his Fourth Amendment rights, ineffective assistance of counsel, prosecutorial misconduct and the violation of his right to due process under the Fourteenth Amendment. For close to the next nine years, appellant was represented by many different assigned counsels, through both the Defender General's Prisoners' Rights Office and through the Defender General's independent contractor system of assigned conflict counsel.

¶ 4. Throughout his PCR proceedings, appellant's representation sparked a series of skirmishes where appellant's various attorneys were either withdrawing or being replaced due to ethical conflicts or other reasons.[1] In April 2010, appellant's latest lawyer from the Prisoners' Rights Office filed a motion to withdraw under the current § 5233 based on the Defender General's Office's determination that appellant's PCR petition no longer raised any nonfrivolous bases for relief. The trial court, citing *Bailey*, granted the motion and ordered that the case proceed on the merits with appellant representing himself. The court then granted permission for petitioner to file an interlocutory appeal, which this Court accepted.

---

[1] Though the sounds of these clashes echo in the parties' briefs, the details of what the court described as the "long and tortured history" of this case are irrelevant to the precise issue raised on appeal. Nevertheless, we cannot refrain from remarking that the intermittent and lengthy lapses in active representation of petitioner, over the nine years this matter has been pending, are wholly unsatisfactory. The delays in this case should prompt evaluation by the Defender General with a view to identifying breakdowns, if any, in the system of assigned counsel and improvements that might be made in the management of such cases by the trial courts. We invite practical and procedural recommendations to avoid repetition of this situation.

¶ 5. Appellant's main argument, offered by amicus curiae, is that he has a vested right to representation in his PCR proceedings under the former version of § 5233, as applied by *Gould*. The Defender General's Office responds that the current § 5233, as interpreted by *Bailey*, controls, under which appellant's right to representation is subject to the Defender General's sole discretion. Which version of § 5233 governs this case, and by consequence whether appellant has an ongoing right to representation in his PCR proceedings, is a question de novo for this Court. See *Breslin v. Synnott*, 2012 VT 57, ¶ 8, 192 Vt. 79, 54 A.3d 525 ("We review questions of law . . . de novo."). We hold that the earlier version of § 5233 applies, by which appellant has a continued right to representation, the merits of the case aside, as explained in *Gould*. We remand this case for a consideration of appellant's counsel's motion to withdraw consistent with *Gould* and the principles set forth below.[2]

¶ 6. At the time appellant filed his PCR motion in 2001, § 5233 entitled a needy person convicted of a serious crime to representation "in any . . . post-conviction proceeding that the attorney *or the needy person* considers appropriate." 13 V.S.A. § 5233(a)(3) (1998) (emphasis added), *subsequently amended by* 2003, No. 157 (Adj. Sess.), § 10. *Gould* held that this version of § 5233 provided a statutory right of representation simply requiring courts to appoint counsel for indigent PCR petitioners upon their request. 2004 VT 46, ¶¶ 13-14. The merit or frivolity of the case mattered not. See *id.* ¶ 20.

¶ 7. Following the 2004 decision in *Gould*, the Legislature amended § 5233 to limit indigents' right to representation in PCR proceedings to

> proceeding[s] which may have more than a minimal effect on the length or conditions of detention *where the attorney considers* the claims, defenses, and other legal contentions to be warranted by existing law or by a

---

[2] The concurrence agrees that appellant's right to counsel is controlled by the old version of § 5233, but proceeds to argue that the Defender General waived its unreviewable discretion to decline representation under the later amended statute that does not apply to this case. *Post,* ¶ 11. As it is entirely unnecessary to the disposition of this case, we do not address the potentials for waiver of the inapplicable statute today.

nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

13 V.S.A. § 5233(a)(3) (emphasis added). As *Bailey* explained, the amendment to § 5233 "expressly conditions a [PCR] petitioner's entitlement to representation on counsel's assessment of the merit of the legal action." 2009 VT 122, ¶ 8.

■ ■ ¶ 8. When appellant filed his PCR petition in 2001, however, he had an unconditional right to representation under the then-existing § 5233. *Gould*, 2004 VT 46, ¶ 16. Under 1 V.S.A. § 214(a)(4), amendment of a statute has no effect on "any right, privilege, obligation or liability acquired, incurred or accrued under the amended [statute] . . . prior to the effective date of the amendment." In other words, the amendment of a statute cannot retrospectively strip a person of a right enjoyed under the prior version of the statute. Applying § 214 here, appellant's right to representation under the former § 5233 vested, and remained vested, after the statute was amended in 2004. We therefore reverse the trial court's decision granting appellant's counsel's motion to withdraw under *Bailey* and ordering him to proceed pro se in his PCR proceedings.[3]

¶ 9. The Defender General objects to this conclusion, arguing that appellant had no right to representation under § 5233 as determined in *Gould*, because the mandate of *Gould* did not take effect until after the Legislature's amendment to that section eliminating the vested right to counsel. As the Defender General points out, the opinion in *Gould* was filed on June 4, 2004, and under Vermont Rule of Appellate Procedure 41(a) an opinion's mandate takes effect twenty-one days after the entry of judgment. The amendment of § 5233 was signed on June 8, 2004, and was effective upon passage. 2003, No. 157 (Adj. Sess.), § 10. Thus, contends the Defender General, appellant's broad statutory right to counsel expired before its application under *Gould* could take effect.

---

[3] Because we resolve this case on the basis of the first argument raised by amicus for appellant, alternative grounds for relief are not addressed. For the same reason, there is no need to address appellant's additional arguments, briefed pro se, challenging the Defender General's determination of PCR merits through an "unreviewable process" fraught with conflicts of interest in assessing, even through contract counsel, the professional judgment or performance of previous counsel assigned by the Defender General.

¶ 10. Even if the Defender General's calculation is correct, there was no race, in law, between the amendment's date and the *Gould* mandate. The right to counsel vested by the prior version of § 5233 was not newly discovered in *Gould*, but was rooted in the language of the statute. The same § 5233 was in effect when appellant first filed his PCR, and under which statute he was then entitled to appointed counsel as he "consider[ed] appropriate" notwithstanding an opinion to the contrary from the appointing authority, the Defender General. 13 V.S.A. § 5233(a) (1998), *subsequently amended by* 2003, No. 157 (Adj. Sess.), § 10. Any difference between the date of amendment and the mandate of *Gould* is of no moment, since appellant's right to counsel is governed by the statute in effect when the PCR was filed. *Gould* confirmed, but did not create, the right to counsel already in place as then written by the Legislature.[4]

*Reversed and remanded.*

¶ 11. **Dooley, J.,** concurring. While I agree that we must reverse the decision to deny appellant counsel and agree that the version of 13 V.S.A. § 5233 in effect when appellant filed his petition for post-conviction relief (PCR) controls, I would reverse on another ground. In my view, the Defender General waived his ability to claim the unreviewable right to label this case as frivolous by the actions and inactions that occurred during the nine years the PCR case was pending and the Defender General was under court orders to provide representation or fund its provision. On this

---

[4] There may be a fight remaining at this early stage of the PCR concerning not the right to representation, which is settled under the old version of § 5233, but over the scope of assigned counsel's obligation to the client. Amicus could be understood to argue that *Gould* and the pre-amended § 5233 entitles a PCR petitioner to have assigned counsel make any and all expressions of law and fact deemed appropriate by the petitioner, even if counsel perceives it to be frivolous — a point on which the Defender General particularly disagrees. This case and argument reflect that such conflict was not necessarily mooted by the amendment to § 5233, and prompts us to renew our referral, initiated in *Gould*, 2004 VT 46, ¶ 25, to the Criminal Rules Committee for proposed standards and procedure by which to handle such conflict while serving a client's right to counsel under the old statute. *Id.* (recommending that the Committee look to the "experience of the several states that have confronted the precise problem that is before us today — providing PCR petitioners with counsel even when first appointed counsel seeks to withdraw on grounds that the underlying claim is frivolous"). In the meantime, we observe only that nothing in *Gould* or the statute requires assigned counsel to advocate or promote a frivolous argument or otherwise act in violation of established ethical standards.

point, I reiterate some of my dissenting opinion in *In re Bailey*, 2009 VT 122, 187 Vt. 176, 992 A.2d 276, in this much more extreme case. The majority in *Bailey* avoided this issue because it was "not asked to decide if Attorney Fulcher waived her right to withdraw."[5] *Id.* ¶ 17. Here, it is directly raised both by appellant and by amicus curiae.

¶ 12. We are a judicial system that highly values expeditious resolution of cases presented to us. Ninety-one percent of civil cases in Vermont are disposed of within two years; in Rutland County where this case originates the figure is over ninety-five percent. See Vermont Judiciary, 2011 Civil Division Statistics, tbl. 3(b), http://www.vermontjudiciary.org/JC/Shared%20Documents/2011-Superior.pdf. While PCR cases have taken a little longer, ninety-two percent are disposed of within three years. See *id.* tbl. 3(h). I do not have complete information on this point, but it is likely that this case is the oldest, or close to the oldest, civil case in Vermont.

¶ 13. This case never moved forward at all for seven years, while a number of lawyers were appointed to represent appellant and each withdrew for various reasons. Indeed, almost all the visible action over those seven years involved the appearance and withdrawal of lawyers, often under the cloud of claims from appellant that they had conflicts of interest or were doing nothing to prepare the case. There were long stretches in which appellant had no lawyer. To the extent there was action on the case — for example, the filing of amendments to the PCR complaint — it was done by appellant and not the lawyer representing appellant. It is very hard to read the file in this case without concluding that the counsel-appointment system in PCR cases is seriously broken.

---

[5] The majority also held that we were not "asked to evaluate the validity of the Defender's screening process," and therefore declined to reach the issue. *Bailey*, 2009 VT 122, ¶ 17. In *Bailey*, the decision was based on the letter of withdrawal from the assigned lawyer; the fact that the withdrawal letter was based on a review process run by the Defender General was disclosed, only in small part, in the briefing. Although the record on this question in this case is slightly more complete because the Defender General sent a letter denying further funding support, it is still inadequate. Appellant challenged the process in the trial court, but he was unrepresented in doing so and made no record of the challenge. Appellant continues his pro se challenge here, but amicus curiae did not attack the process. For that reason, and in view of the disposition, I agree that we cannot reach the due process challenge here.

¶ 14. While I would say that seven years of inaction demonstrates a system failure that undermines the Defender General's position, there are two actions that most vividly show a waiver. The first is that in 2003 the Defender General's Office informed the court that it had done a review of appellant's case to determine whether to continue to fund representation of him and "the review process is complete and . . . they have approved monies for ad hoc counsel in this case." That sent the clerk of the Rutland Superior Court on a five-month odyssey to find a lawyer for appellant. The file contains a number of letters from a scheduling clerk in the court office to lawyers seeking their willingness to be assigned. The letters contain the following sentence: "His claim has been reviewed by the Office of the Defender General and was deemed to 'have merit,' however, to date the Court has been unable to secure counsel for the petitioner." One of the recipients of those letters answered that she had reviewed the file and would provide the necessary representation. She was appointed but withdrew six months later because she moved out of state.

¶ 15. The second action is the stipulation under which appellant's final lawyer, Rory Malone, was appointed. The first lawyer to appear for appellant in 2001 was an attorney in the Defender General's Office. Appellant challenged the appointment because he claimed that the public defender who handled his appeal did not provide effective assistance of counsel and that created a conflict of interest for any employee of the Defender General. In response to that challenge, the attorney withdrew, only to reappear to replace the lawyer who moved out of state.[6] That immediately started another round of contention on whether the attorney in

---

[6] The reappearance occurred over a year after the lawyer withdrew. This kind of delay explains much of how it can be possible that this PCR was pending for nine years before the final lawyer withdrew. In his brief, the Defender General argues that appellant was responsible for creating the delay by challenging his counsel, particularly on conflicts of interest. Appellant consistently took the position that employees of the Defender General had a conflict of interest. In fact, Judge Stephen Martin ruled on September 28, 2006, following an appeal to this Court, that there was a conflict of interest and granted appellant's motion to remove the lawyer. In view of this ruling, I do not believe we can conclude that a substantial part of the delay is attributable to appellant. I also note that appellant finally agreed to representation by a different employee of the Defender General when the Defender General agreed to an independent review of his claim of ineffective assistance of counsel from the Defender General's office in his appeal. In many ways, the record in this case looks and feels like that in *State v. Brillon*, 2008 VT

the Defender General's Office had a conflict of interest. Over a year later — and five years from the filing of the PCR — in September 2006, the court ruled that there was a conflict of interest. After the hearing at which this order was made, the lawyer from the Defender General's Office called the court and stated that the Defender General had sent the file to another lawyer for review and that "[a]fter review DG will determine whether or not they will pay for another attorney to represent" appellant. Another year and a half transpired in which appellant was unrepresented, and there was no progress on the case. There was no disclosure of the results of the "review." In fact, in December 2007, the trial court issued an order directing the Defender General to assign counsel or the court would do so and order the Defender General to pay for it.

¶ 16. Finally, in May 2008, now almost seven years after the case was filed, appellant agreed to be represented by another lawyer in the Defender General's Office, Rory Malone. The agreement, which was reduced to writing, provided that: (1) another case in which appellant claimed that the State lost part of his property would be dismissed; (2) Rory Malone would represent appellant in PCR proceedings related to his trial and conviction; and (3) the Defender General would hire conflict counsel to conduct a "merits review" with respect to appellant's claim that appellate counsel, in the appeal from his conviction and in a separate return of property claim, rendered ineffective assistance of counsel. There was no provision concerning a merits review of appellant's PCR with respect to conduct of the trial, apparently because a merits review had been done in 2003 and again in 2006. Appellant signed this agreement.

¶ 17. On the surface, it appeared that the case finally began to move. In status conference after status conference counsel reported on consulting an expert witness on effectiveness of trial counsel and eventually consulting a second expert. Indeed, appellant's counsel was so firm on trial preparation that the State retained an expert witness to respond to appellant's case. As it turned out — though it was not disclosed to the court — the Defender General was conducting yet another merits review of appellant's case that resulted in the one-sentence withdrawal of

35, 183 Vt. 475, 955 A.2d 1108, rev'd on other grounds sub nom., Vermont v Brillon, 556 U.S. 81 (2009).

Rory Malone and a similar brief letter from the Defender General denying any further funding for counsel for appellant.[7] This occurred approximately eight years and four months after the first lawyer in the Defender General's Office first entered an appearance for appellant. The letters gave no explanation of how the Defender General could have found merit to appellant's claim in 2003, and none in 2010, or the result of the 2006 review. Since the Defender General is acting under 13 V.S.A. § 5233(a)(3), he takes the position that he does not have to explain his actions.

¶ 18. In the brief filed in this Court, the Defender General states that he had "several attorneys review the case and was unable to find a legal expert to testify on behalf of Mr. Crannell." As is true in this case, following *Bailey*, this statement is wholly unsupported by the record because the Defender General refuses to disclose the process he followed, making limited and selective disclosures when they support his interest.

¶ 19. Approximately three weeks after counsel withdrew in this case and the Defender General informed the court that it would pay for no further representation, appellant filed a fifty-two page amendment to his PCR petition. It represents a complete statement of appellant's claims, which include claims of ineffective assistance of counsel both in the trial court and on appeal, denial of a right to a speedy trial, prosecutorial misconduct and loss of exculpatory evidence. Because none of appellant's lawyers ever worked to reach a complete and agreed-upon complaint in this case, and because the Defender General's "merits review" is wholly secret, it is impossible to determine what counsel, outside counsel, or experts relied upon to determine the merit of appellant's claims or whether they evaluated all the claims.

¶ 20. As I stated in *Bailey*, I would follow the decision in *People v. Demarest*, 801 P.2d 6 (Colo. App. 1990), and not allow abandonment of representation where the lawyer has been legally

---

[7] I recognize that reviewing appellant's claim with an expert was both a determination of whether appellant's claims had merit and trial preparation if the expert would testify that appellant's trial counsel had rendered ineffective assistance. There is no indication that counsel was forthcoming about what he was doing, and, of course, the secrecy of the process makes it impossible to determine what occurred. The Defender General argues that it is a "telling fact" that no lawyer ever signed a PCR complaint. I agree that it is "telling," but for a different reason. No lawyer went through the initial step of preparing a complaint that itemized the claims.

obligated to represent the client and makes no disclosure that actual representation depends upon a review. 2009 VT 122, ¶ 42 (Dooley, J., dissenting). This case is a poster child for this approach, where the client is denied representation for years and large amounts of judge and staff time is wasted because of the inability to resolve the question of representation. The case for waiver is much stronger here because (1) in 2003, the Defender General's Office announced it had investigated the merits of appellant's claim and went forward with representation; (2) in 2006, after the amendment to 13 V.S.A. § 5233(a)(3), it announced it was doing another investigation, but again went forward with representation thereafter; and (3) in 2008, it signed an agreement to represent appellant, with no disclosure that the representation was subject to another merits review.

¶ 21. In his brief, the Defender General argues that the "right to withdraw" belongs to him and is not reviewable by the courts, and, therefore, no waiver can occur. I fail to understand the logic of this argument. A waiver is an intentional relinquishment of a known right that can occur by conduct. See *Hixson v. Plump*, 167 Vt. 202, 206, 704 A.2d 1159, 1161 (1997). Calling the Defender General's power to withdraw a "right" is not inconsistent with a waiver. Nor is the inability of the courts to review the grounds for withdrawal inconsistent with a waiver. I do not accept the extreme position that the Defender General can abandon representation without warning or explanation and despite prolonged delay and totally inconsistent conduct. In my view, if the Defender General is going to deny financial support for representation, he must do so expeditiously and cannot first grant financial support after a merits review, and then thereafter deny it with no judicial review.

¶ 22. The majority responds that we do not have to reach the waiver question, even though raised on appeal,[8] and with lip service that the lapses in representation of appellant are "wholly unsatisfactory" and the Defender General should investigate "breakdowns, if any, in the system of assigned counsel" and "improvements that might be made in the management of such

---

[8] I note that it is a choice to decide this case on the applicability of the statute, and not on waiver, and the majority could have grounded its decision on waiver, finding it unnecessary to address the question of whether appellant had a right to pre-amendment procedures. For me, this is an example of "kicking the can" down the road because this decision will affect few, if any, additional cases and does not move us towards a solution to the deficiencies that this case so glaringly reflects.

cases by the trial courts." *Ante*, ¶ 5 n.1. In my view, one does not have to investigate whether there are breakdowns in the system; this case alone is overwhelming evidence of breakdowns. Nor is the Defender General the person to investigate the management of these cases by the trial courts; it is our duty to determine the proper management of the trial courts. If post-conviction relief is a true safeguard against unlawful incarceration, it must be adjudicated expeditiously to minimize the time of such incarceration. I think it indefensible that a PCR case would reach this age. With the outcome of the PCR petition unknown, it represents extreme prejudice that the client would sit in jail for nine years while the lawyer decides whether to extend representation. The hours and hours of court and litigant time that went into it only underscore this conclusion.

¶ 23. In reaching this position, I am not arguing that appointed counsel can be required to extend representation that violates ethical mandates. Nor am I arguing that a lawyer cannot change position on whether a case is frivolous. I am arguing instead that the Defender General has waived the ability to withdraw under 13 V.S.A. § 5233(a)(3). I believe that the Defender General must seek trial court approval to withdraw. I would reverse on this basis.

¶ 24. Consistent with my rationale, I would go further than merely reversing the trial court decision. I do not know how many other cases in the system resemble this one, but we should act now to prevent such reoccurrence. We should provide by rule that the Defender General has a specific, relatively short time to decide whether he will provide representation and that he is bound by that decision, unless he makes a reviewable showing of good cause for withdrawal.[9] Meanwhile, we should abandon any pretext that representation is occurring pending the review.

---

[9] I still have significant concern whether the secret, unreviewable process comports with due process, see *Bailey*, 2009 VT 122, ¶ 46 (Dooley, J., dissenting), but I leave that question to another day.