2013 VT 43

## In re William Kimmick

[72 A.3d 337]

No. 11-378

Present: Reiber, C.J., Dooley, Skoglund and Burgess, JJ., and Bent, Supr. J., Specially Assigned

Opinion Filed June 21, 2013

*William A. Kimmick*, Pro Se, Beattyville, Kentucky, Petitioner-Appellant.

*William H. Sorrell*, Attorney General, and *David Tartter*, Assistant Attorney General, Montpelier, for Respondent-Appellee.

*Matthew S. Stern* of *Gravel & Shea PC*, Burlington, for Amicus Curiae Gravel & Shea PC.

*Matthew F. Valerio*, Defender General, *Anna Saxman*, Deputy Defender General, and *Thomas Tarnow* (On the Brief), Montpelier, for Amicus Curiae Office of the Defender General.

¶ 1. **Reiber, C.J.** Petitioner William Kimmick appeals from a judgment of the superior court, civil division, denying his petition for post-conviction relief (PCR) alleging ineffective assistance of counsel at sentencing. Petitioner contends the trial court erred in: (1) granting his assigned PCR counsel's motion to withdraw; and (2) rejecting petitioner's claim that his trial attorney committed fundamental errors affecting the sentence. In addition, amicus

curiae appointed by the Court to assist petitioner asserts that the Defender General's post-conviction merit-review procedures violated petitioner's due process rights. We affirm.

¶ 2. Although lengthy, a full statement of the procedural history is helpful to understand the issues; additional material facts will be set forth in the discussion that follows. Petitioner was originally charged with second-degree murder in the killing of his ex-wife, Katherine Kimmick, in January 2004. In November 2004, petitioner entered a negotiated plea of guilty to an amended charge of manslaughter. The plea bargain allowed both parties to argue for any lawful sentence. Following a contested sentencing hearing in April 2005, defendant was sentenced to fourteen to fifteen years to serve. Defendant appealed the sentence, alleging that the trial court erred in permitting unsworn victim-impact testimony, allowing a nonvictim to testify, and imposing a sentence in which the minimum and maximum terms were effectively the same. We affirmed. *State v. Kimmick*, 2007 VT 45, 181 Vt. 635, 928 A.2d 489 (mem.).

¶ 3. In April 2008, petitioner filed a pro se PCR petition, asserting that his trial attorney had provided ineffective assistance at sentencing in several respects. Petitioner claimed principally that counsel violated his right to allocution under Vermont Rule of Criminal Procedure 32(a)(1)(C) by threatening to withdraw if petitioner testified at the sentencing hearing about the victim's alcohol problem and violent propensities. Petitioner also asserted that trial counsel was deficient in failing to correct or rebut allegedly inaccurate information in a psychiatric evaluation, as well as misstatements in the presentence investigation report (PSI); failing to object to unsworn victim-impact testimony and the testimony of a nonvictim witness; and failing to present an adequate case at the hearing. The lengthy PCR petition was supported by a number of exhibits.

¶ 4. Shortly after the filing of the petition, the trial court appointed Seth Lipschutz of the Prisoner's Rights Office to represent petitioner. In May 2008, attorney Lipschutz wrote to petitioner informing him that the state's attorney had consented to a new sentencing hearing but would oppose the imposition of a different sentence. Petitioner rejected the offer. Following a hearing in June 2008, the trial court granted attorney Lipschutz's motion to withdraw and appointed attorney Mark Furlan to represent petitioner.

¶ 5. The record discloses a number of status conferences with attorney Furlan and the state's attorney over the next several months involving efforts to resolve the complaint. A September 3, 2009, letter to the court from attorney Furlan, however, explained that negotiations with the state's attorney had broken down and that his new plan was to attempt to find an expert attorney to support petitioner's ineffective-assistance claims. A docket entry from a status conference in December 2009, however, contains a notation that Furlan had not been able to obtain an expert witness and had decided to depose petitioner's trial attorney, David Williams, as an alternative step. Williams was duly deposed in January 2010. The following month, attorney Furlan informed the court that he had referred the matter to attorney Charles Martin for a second opinion. Martin apparently had a conflict of interest, and the matter was referred to attorney Adele Pastor.

¶ 6. In late April 2010, attorney Furlan filed a motion to withdraw, informing the court that his review of the case had not revealed any colorable claims, and that in accordance with the Defender General's policy, the file had been reviewed by a second, experienced PCR attorney, Ms. Pastor, who had reached the same conclusion. The Defender General simultaneously filed a letter with the court stating that his office had reviewed the matter, determined that petitioner's claims did not support representation under 13 V.S.A. § 5233(a)(3),[1] and would not pay for further representation of petitioner.

¶ 7. Petitioner filed an opposition to the motion, asserting that attorney Furlan had waived the opportunity to withdraw and that the Defender General's screening process did not comply with § 5233. Shortly thereafter, petitioner filed an amended pro se petition that focused on the claim that counsel was ineffective and violated petitioner's right to allocution by threatening to withdraw if petitioner blamed the victim and failed to accept responsibility for the crime. Following a hearing in June 2010, the trial court issued an order deferring a ruling on the withdrawal motion until

---

[1] Under 13 V.S.A. § 5233(a)(3), financially eligible persons are entitled

[t]o be represented in any other postconviction proceeding which may have more than minimal effect on the length or conditions of detention where the attorney considers the claims, defenses, and other legal contentions to be warranted by existing law or by a nonfriviolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

attorney Furlan had the opportunity to review the amended petition and consult with petitioner. Thereafter, Furlan wrote the court explaining that he had spoken at length with petitioner, reviewed the file and the amended petition, and remained of the view that the PCR claims lacked merit.

¶ 8. The trial court granted the motion to withdraw in late July 2010. Petitioner, in response, filed a notice of pro se appearance and motion for appointment of a legal expert. Following a hearing on the motion, another judge issued an order finding that petitioner had stated a legitimate basis for appointment of an expert, and "requested" that attorney Furlan review the motion and file any objection to his reappointment as counsel of record. In a written response objecting to his reappointment, attorney Furlan stated that his withdrawal had followed more than a year of investigation and research into petitioner's claims, and the decided judgment of himself and two other attorneys that they lacked merit. The trial court thereafter issued an order, dated October 14, 2010, finding attorney Furlan's objections to be "persuasive" and declining to reappoint him as counsel for petitioner. In the same order, the court granted petitioner thirty days in which to file a proposal identifying an expert witness and the estimated cost of his or her services. Petitioner subsequently requested, and the court granted, an extension to January 2011 to locate an expert.

¶ 9. Petitioner did not identify an expert witness to support the claims. Instead, in February 2011, he moved for summary judgment, relying on the deposition testimony of attorney Williams and his own affidavit. The State filed a cross-motion for summary judgment in March 2011, and the court issued a thirty-three-page ruling in October 2011. Following an exhaustive review of the record and analysis of the claims, the court concluded that attorney Williams had provided effective assistance of counsel, and that petitioner was not prejudiced by his strategic choices. Accordingly, the court entered judgment in favor of the State. This appeal followed.

¶ 10. Petitioner claims a procedural infirmity in the trial court's decision to grant PCR counsel's motion to withdraw. Petitioner argues that attorney Furlan waived the right to withdraw by representing petitioner for over two years, and that the review process for determining the right to representation under 13 V.S.A. § 5233(a)(3) fails to adequately protect a defendant's inter-

.ests. In a similar vein, amicus curiae appointed by the Court asserts that allowing appointed counsel to withdraw without adequate oversight of the merit-review determination violates due process.

■ ¶ 11. We considered the procedure for withdrawing from representation in a PCR proceeding in *In re Bailey*, holding that "[t]here is no constitutional or statutory right to insist that counsel elaborate on their motions to withdraw, and [that] it would undermine the intent of 13 V.S.A. § 5233(a) to require counsel to do so." 2009 VT 122, ¶ 15, 187 Vt. 176, 992 A.2d 276. Petitioner and amicus assert, however, that while *Bailey* might apply where appointed counsel moves to withdraw following an *initial* review of the. record, it should not control where, as here, counsel has expended considerable time, effort, and resources investigating the claims before moving to withdraw. In these circumstances, it is argued, the petitioner has acquired a property interest that affords protection from arbitrary action and requires, "[a]t a minimum, information . . . sufficient to confirm that counsel's decision [to withdraw] is not arbitrary or based on improper considerations outside of § 5233(a)(3)."

■ ¶ 12. Whatever merit may inform the argument, we need not resolve it here, as the record — summarized above — clearly shows that the court's decision to grant counsel's motion to withdraw was· not arbitrary or uninformed, and fully satisfied whatever minimal due process protections against unreasoned action a petitioner in these circumstances might enjoy. Counsel regularly apprised the court of his efforts and litigation strategies on behalf of petitioner, explained that he could not locate an expert to support the claims of ineffective assistance, and indicated that he would depose trial counsel as an alternative means of attempting to establish a basis for the claims. Following the deposition, counsel further informed the court that he could find no colorable claims that met the criteria for representation under § 5233, and that this conclusion was shared by a second, experienced attorney who had reviewed the record and by the Defender General's Office.

¶ 13. Ordered by the court to take a second look at the matter, to review the amended pro se petition, and to consult with petitioner, counsel thereafter filed a letter with the court outlining his further actions. Counsel stated that he had spoken "at some

length with petitioner," reread pertinent portions of the record, specifically reconsidered petitioner's principal "contention that his opportunity to meaningfully allocute . . . was effectively denied him by his counsel's threat to abandon representation of him if he did not comply with counsel's strategy," and reviewed the case on which petitioner relied, *In re Stevens*, 144 Vt. 250, 478 A.2d 212 (1984). Counsel concluded that, in the end, his opinion concerning petitioner's claims "remain[ed] unchanged."

¶ 14. In light of this record, we have no difficulty concluding that the court's decision to grant counsel's motion to withdraw was neither arbitrary nor uninformed, and was fully consistent with any minimal due process protections against arbitrary action that might apply in this context.

¶ 15. We also find nothing inconsistent, as petitioner claims, between the court's ruling and its finding that petitioner had made a sufficient showing for the payment of an expert witness. As we have explained, the standard for the payment of "necessary services" under 13 V.S.A. § 5231(2) requires a "showing [of] how the assistance advances the argument that petitioner's trial was fundamentally flawed." *In re Barrows*, 2007 VT 9, ¶ 6, 181 Vt. 283, 917 A.2d 490. Thus, to obtain the services of an expert, petitioner was required merely to describe with some particularity "how a legal expert would assist petitioner to prove" his claims. *Id.* ¶ 9. This is a separate standard from that of obtaining representation under § 5233, and independent of any rights under that section. As we explained in *Barrows*, "the assignment of counsel and provision of . . . services are treated separately, so that waiver or denial of one does not preclude entitlement to the other." *Id.* ¶ 7. Accordingly, nothing in the court's finding that petitioner had met his burden for obtaining expert services is inconsistent with its decision granting the motion for withdrawal of counsel.

¶ 16. Turning to the merits of petitioner's claims, they focus — as noted — on his contention that trial counsel rendered ineffective assistance at sentencing by threatening to withdraw if petitioner or other witnesses testified about the victim's alcohol abuse and violent propensities. It is well settled that a defendant who challenges the adequacy of counsel's assistance must show by a preponderance of the evidence, first, that counsel's performance fell below the standard of a reasonably competent attorney, and

second, that counsel's failures prejudiced the defendant, i.e., that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 691-94 (1984); *In re LaBounty*, 2005 VT 6, ¶ 7, 177 Vt. 635, 869 A.2d 120 (mem.). A trial court's findings in this context will be upheld absent a showing of clear error, and its conclusions affirmed if reasonably supported by those findings. *In re LaBounty*, 2005 VT 6, ¶ 7.

¶ 17. Assessed in light of this standard, we discern no error. Although the trial court found that petitioner had satisfied neither of the requirements for a showing of ineffective assistance, it is sufficient for our purposes to conclude that the record amply supports its finding that none of counsel's alleged deficiencies prejudiced petitioner. Substantial information concerning the victim's history of alcohol abuse and violence was presented to the sentencing court. The PSI contained defendant's statement that the victim was drunk on the night of the offense and attacked him with knife; a summary of a letter from petitioner's mother explaining that the victim was an alcoholic and that petitioner was "the battered partner in their relationship"; an addendum containing eyewitness descriptions of the victim on the night of the offense, stating that she had been cut off from having any more drinks at a local bar, became belligerent, and left without paying; statements by the victim's mother and sister acknowledging that the victim drank more than she should; and a description by the victim's boyfriend of a similar incident in which she came home drunk and threatened him with a knife.

¶ 18. Also submitted to the sentencing court was a psychiatric evaluation of petitioner in which he described many prior incidents of alcohol-induced violence by his former wife. The report's author, a board certified psychiatrist, concluded that petitioner's account of the crime was "generally consistent with available information"; that the victim "was a severe alcoholic prone to explosive and violent episodes that are well documented by numerous individuals including members of her own family"; that the victim had "attacked [petitioner] on a number of occasions"; and that petitioner's actions were a "response, for the first time, to [the victim's] countless explosive attacks and provocations."

¶ 19. At the sentencing hearing itself, the victim's mother testified that the victim had engaged in behaviors that had

understandably enraged petitioner; that petitioner and his former wife "were both a victim of circumstances" and that the offense was not "entirely [petitioner's] fault." In addressing the court, the state's attorney admitted the victim's "inner demons and . . . profound alcohol problem."

¶ 20. It is thus abundantly clear that the sentencing court was presented with substantial evidence of the victim's history of alcohol-induced violence, and that any additional testimony on the subject by petitioner or others would have been cumulative and of little additional effect. See *Rose v. McNeil*, 634 F.3d 1224, 1243 (11th Cir. 2011) ("Obviously, a petitioner cannot satisfy the prejudice prong of the *Strickland* test with evidence that is merely cumulative of evidence already presented."); *People v. Hayes*, 961 N.E.2d 311, 322 (Ill. App. Ct. 2011) (holding that trial counsel's failure to introduce evidence of victim's violent character which was "merely cumulative of that already presented" could not have been prejudicial). Indeed, in its findings the sentencing court here expressly recognized that petitioner had committed the offense while the victim was drunk and armed with a knife, and that theirs had been a particularly "volatile relationship," as evidenced by the statements in the PSI. The court flatly rejected the notion, however, that these circumstances militated in favor of a lighter sentence, castigating petitioner for appearing "to place the blame on" the victim in some of his statements, and characterizing the offense as "a family tragedy of which you [petitioner] are the primary author." The record thus firmly supports the court's finding that trial counsel's unwillingness to focus on the victim at sentencing not only failed to prejudice petitioner, but likely redounded to his benefit.

¶ 21. Petitioner's remaining claims are equally without merit. For the reasons discussed above, we discern no support for a finding of prejudice resulting from counsel's failure or refusal to contest statements by the victim's family members in the PSI about her propensity for violence, or the lack thereof. Petitioner's reliance on *Stevens* is also misplaced. There, we held that trial counsel's failure to inform the petitioner of certain important evidence before the sentencing court had deprived him of a meaningful opportunity to address the evidence in his statement in allocution. 144 Vt. at 260, 478 A.2d at 217-18. Here, there was no showing that petitioner was similarly misinformed, and equally

no showing that petitioner was prejudiced by any omissions in his statement to the court. Nor, finally, do we find any prejudicial misunderstanding by trial counsel as to the nature of the plea. As the trial court here noted, attorney Williams twice referred in his deposition to a concern that the wrong strategy might induce the court to reject the plea. He later corrected himself, however, explaining that the real risk concerned the severity of the sentence to be imposed, and that his trial strategy for obtaining a lesser sentence than the State had requested was "for [petitioner] to take full responsibility for his conduct, and not blame [the victim] for it." We thus find no merit to the claims of ineffective assistance, and no basis to disturb the judgment.

*Affirmed.*

¶ 22. **Dooley, J.,** concurring. I concur in the Court's decision, essentially for the reasons stated. I write to put this case in context with others. Amicus makes two arguments that I have favored in the past — that the procedure for withdrawal of representation employed by the Defender General denies due process of law and that the act of counsel in accepting representation constitutes a waiver of the right to rely on 13 V.S.A. § 5233(a)(3) for an automatic withdrawal. I agree with the majority that neither fits the facts of this case.

¶ 23. First, this is an example of a case where the withdrawing attorney explained the grounds for withdrawal, a practice the Defender General has argued in the past must never be done in order to protect the client. As the majority explained in *ante*, ¶¶ 12-13, counsel explained his progress at each step of his representation, consulted with petitioner and even considered a supplemental argument made by petitioner and responded in writing. I agree that petitioner has a weak case for further due process protections. If appointed counsel and the Defender General had made equivalent disclosures in other cases we have reviewed, I would be more confident that the Defender General's process could be fairly applied. In my judgment, the main point to draw from this case is that appointed counsel can disclose the steps in this representation, and in forming counsel's opinion on merit, without injuring the client. I recommend that these steps be employed in future cases.

¶ 24. Second, I agree that the grounds for applying waiver to this case are also weak. We need only compare the events here to

those in *In re Crannell*, 2012 VT 85, 192 Vt. 406, 60 A.3d 632, where nine years expired while the Defender General reviewed petitioner's entitlement to counsel and found entitlement, or made no adverse decision, or promised counsel, only to rely on § 5233(a)(3) to withdraw. Review in this case took a long time, but there never was a point where counsel made promises about continuing representation ·on which he could. not produce.

¶ 25. Although I concur in the rejection of the due process and waiver arguments of amicus, there are aspects of this case that show a process that remains broken. Justice Burgess argues in his concurrence that petitioner should have no right to representation after he rejected the prosecution's offer of resentencing. I draw the opposite conclusion from that event — petitioner's claim apparently had enough merit to cause the prosecutor to make a settlement offer that gave petitioner what he wanted. That fact, plus the lengthy analysis and decision of the superior court, gives pause as to whether appointed counsel is applying the standard of frivolity of Rule 3.1 of the Vermont Rules of Professional Conduct.

¶ 26. More important, the delays in the representation decision for PCRs remains unacceptable for any justice system. The challenge here was to what occurred at sentencing after a guilty plea. I cannot accept that it takes two years to determine whether petitioner will have counsel to assert the PCR claims arising out of sentencing. As I did in my concurrence in *Crannell*, I urge that we impose a much shorter period for counsel review and hold a waiver has occurred if review has not been completed in that time period.

¶ 27. **Burgess, J.,** concurring. I concur in affirming the denial of this PCR petition. I also concur in upholding the trial court's approval of PCR counsel's motion to withdraw and the Defender General's refusal to assign substitute counsel, but arrive at the latter two points more directly. The effectiveness of petitioner's counsel at sentencing required no examination by the trial court, and the assignment and lack of assignment of subsequent attorneys to assist in the PCR need not have consumed any more hard-pressed criminal justice system resources, once petitioner refused relief. Alleging less than competent lawyering at his sentencing, petitioner filed a PCR complaint in April 2008 demanding resentencing. Within two months, petitioner's then newly

assigned PCR counsel secured the State's agreement to a new sentencing hearing.[2]

¶ 28. Petitioner's rejection of this offer — for all of the relief available to him — rendered continued litigation of his claim frivolous and wasteful, if not moot. See *In re Unnamed Defendant*, 2011 VT 25, ¶ 2, 189 Vt. 585, 15 A.3d 1039 (mem.) (noting that case becomes moot when, absent actual controversy, court "can no longer grant effective relief" (quotation omitted)). No lawyer is obligated to advocate a frivolous cause. See Vermont Rule of Professional Conduct 3.1 (prohibiting attorneys from pressing meritless claims). Presumably in an abundance of caution for petitioner's sake, the Defender General was generous to a fault to even consider extending additional assistance to petitioner after the relief requested was turned down. The Defender General's denial of services, authorized under 13 V.S.A. § 5233(a)(3), was patently correct and required no more process.

¶ 29. Under these circumstances it was no denial of any right to leave petitioner to represent himself, and the withdrawal of counsel and denial of replacement counsel can be affirmed accordingly.

¶ 30. I am authorized to state that Judge Bent joins this concurrence.

---

[2] As noted by the trial court, PCR counsel informed petitioner by letter in May 2008 that the state's attorney had consented to a new sentencing hearing. In his letter to petitioner, PCR counsel advised: "Since the State is offering you everything substantively you are asking for (a remanded sentencing hearing based on ineffective assistance of counsel), it would be difficult to explain to the Court why you might refuse the offer." Nevertheless, petitioner declined to settle for total victory.