*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

**ENTRY ORDER**

SUPREME COURT DOCKET NO. 2014-051

JANUARY TERM, 2015

In re Donald R. O'Dell, Jr.        }   APPEALED FROM:

                                  }

                                  }   Superior Court, Bennington Unit,

                                  }   Civil Division

                                  }

                                  }   DOCKET NO. 500-12-11 Bncv

                                     Trial Judge: John P. Wesley

In the above-entitled cause, the Clerk will enter:

Petitioner appeals from a judgment of the superior court, civil division, denying his petition for post-conviction relief based on a claim of ineffective assistance of counsel. We affirm.

Following a jury trial in December 2009, defendant was convicted of aggravated assault with a deadly weapon. The judgment was affirmed on appeal in State v. O'Dell, No. 2010-172, 2011 WL 4975170 (Vt. Apr. 21, 2011) (unpub. mem.). The relevant facts were summarized there as follows:

> The complainant lived with his wife in a rented cabin at the Walk in the Woods Motel in Woodford. On the evening of February 18, 2009, he approached a snow plow that was clearing the motel parking lot to ask the driver not to pile snow in front of his cabin. The driver, later identified as defendant, also lived at the motel and traded rent for plowing services. The complainant testified that defendant, a white man, opened the truck door and angrily told the complainant, a black man, not to give him orders and to "take [his] monkey ass back to the jungle where [he] was from." A short time later, as the complainant approached the truck again, defendant exited the vehicle with what appeared to be a crowbar, yelled racial slurs at the complainant, and threatened to kill him. The complainant, in response, said that he was going to call the police and turned to leave when defendant struck him on the head with the crowbar. The complainant staggered, and defendant swung several more times striking his arm and shoulder. The complainant ran into the motel lobby, reported the incident to another resident and the motel manager, and called the police.

> The other resident recalled that the complainant was shouting "he's going to kill me" and reported that defendant had attacked him with a crowbar. She saw defendant with what appeared to be

a tire iron in his hand, and observed a laceration on the complainant's head and a bump "about the size of a mango." The motel manager also observed a large bump on complainant's head.

A young man who had recently checked into the motel with his family because of the snow storm observed much of the incident from about ten to fifteen yards away, while he was standing outside making a cell phone call. He recalled observing a black man approach the snow plow and saw a white man in front of the plow with a "long cylindrical object" in his hand. The witness observed the white man strike the black man on the head with the object, and then strike him three to four more times. The witness returned briefly to his room, then went back outside, where he observed the snow plow driver throw what appeared to be the cylindrical object into the woods behind the motel.

The state trooper who investigated the incident observed a laceration and a "baseball sized welt" on the complainant's head, several lacerations on his forearm, a swollen shoulder, and several rust-colored marks or striations on the complainant's shirt. The trooper spoke with defendant, who was holding a meat patty to his eye. Defendant claimed that the complainant had struck him and attacked him with a knife. The officer observed no injuries to defendant's eye, and defendant sought no medical attention for the claimed injury. At trial defendant testified in his own behalf, denying that he had attacked the complainant, and claiming that he had been the victim of an assault. Defendant also called two character witnesses who testified that the complainant had a reputation for untruthfulness.

Id. at *1.

On direct appeal, petitioner claimed that the trial court erroneously (1) coerced a guilty verdict by placing a time limit on the jury's deliberations and (2) denied a defense request to present a witness out of order. The additional facts underlying these claims were as follows:

During a pretrial conference in October 2009, the court confirmed that the case was scheduled for a two-day trial, although defense counsel stated at the time that it might be completed in one. Several months later, at the end of the first day of trial—a Thursday—the court informed counsel at the bench that he intended "to wrap it for the day." Defense counsel thereupon indicated that a defense witness, Dr. Lefebvre, had been subpoenaed only for the first day of trial and was present to testify but would not be available "tomorrow unless I give him a new subpoena, but I suspect this is going to go beyond tomorrow." The trial court responded: "It can't go beyond tomorrow. It isn't possible to go beyond tomorrow. I'm leaving—I'm going out of state on Saturday. I'm not coming back. We scheduled it for two

2

days when you told us you thought it would be a day . . . ." The court continued: "[I]t can't go beyond tomorrow. . . . Do what you have to do with your doctor. You subpoena him, you subpoena him."

After some additional discussion concerning other witnesses, the court restated its view on the imperative to complete the trial, stating: "Okay. But we're going to go. There is no option. It has to end tomorrow." Defense counsel said, "Okay." The court responded, "Thought I was pretty clear about that . . . ," and defense counsel then repeated, "That's fine by me."

After the defense rested at the end of the second day of trial— without having called Dr. Lefebvre—the court excused the jury and addressed counsel as follows: "It's about 4:25 but it's not as though we really have an option. The Court is not open tomorrow. It's not open Sunday, and I'm not here all next week. So, we will need to go on." The court then explained that it wished to inform the jury as to "what we're doing" and determine whether it was impossible for any them "to be here tonight" and further indicated that it would like to do so in the jury room rather than in open court. Counsel agreed, and the court subsequently returned to explain that he had informed the jury of the plan and asked them if any had any "difficulty about staying late." None had so indicated, and the court observed that their "general reaction was a desire to go ahead anyway today and not come back another day in any event. So I think they're fine."

Following closing arguments and jury instructions, the jury began deliberations. During deliberations, the jury asked to have certain testimony replayed, which the court allowed. After about four hours, the jury returned with a guilty verdict. Defendant later moved for a new trial based, in part, on the court's refusal to allow Dr. Lefebvre to testify at the end of the first day of trial. The court denied the motion, noting that defendant failed to subpoena the witness to appear for the second day, as the court had advised, and that—based on Dr. Lefebvre's testimony at the motion hearing— there was no basis to conclude that defendant was prejudiced by the court's ruling.

About two weeks later, defendant moved to reconsider the denial of the motion for new trial based, in part, on "newly discovered evidence." The evidence in question consisted of a letter that defense counsel had recently received from one of the alternate jurors in defendant's trial. The letter recalled that the trial court had addressed the jury in the jury room before final arguments, informing them that he had "imminent travel plans" to the West coast. The letter states that the juror interpreted the

3

court's remark "to encourage, and to bestow [the court's] official blessings, upon a quick verdict."

Defendant's motion to reconsider was accompanied by a motion to recuse the trial court from ruling on the matter. The motion was referred to the Administrative Judge, who denied it, finding no basis to conclude that the court could not fairly rule on the motion. The trial court subsequently issued a written ruling in April 2010, finding "no irregularity in its statement to the jury regarding the need to complete the trial that day, even including reference to the judge's personal plans." First, the court concluded that the claim had been waived, recalling that "[t]he parties, with knowledge of the upcoming weekend and the [court's] unavailability the next week, agreed that the jury should be informed that trial needed to be completed that day." Second, the court found no basis to conclude that the jury had been improperly influenced, observing that they had deliberated for over four hours and had asked for certain testimony to be replayed, demonstrating that they were "diligent, hardworking," and fully engaged. Accordingly, it denied the motion to reconsider.

Id. at *2-3.

In considering petitioner's claim of improper jury coercion, we concluded that, while the trial court's statement to the jury regarding the need to complete the trial that day "came close to precisely the sort of deadline that this and other courts have proscribed," it was clear that defense counsel had accepted the court's actions, and therefore had waived any claim of error on appeal. Id. at *4. As for the claim concerning Dr. Lefebvre, we concluded that his testimony at the hearing on the motion for new trial "refutes any possible finding of prejudice; he corroborated that the victim had suffered a head injury resulting from a 'likely blunt [force] trauma,' acknowledged that the injuries were 'consistent with a good blow to the head' which could have been caused by a crowbar, and could not rule out the possibility of a concussion." Id. Accordingly, we found no basis to disturb the judgment.

Following our affirmance, in December 2011, petitioner filed a petition for post-conviction relief, later amended in April 2012, raising numerous claims of ineffective assistance of counsel. The trial court held an evidentiary hearing in November 2013 and the following month issued a written decision denying the motion.

The court addressed four specific claims raised by petitioner at the hearing. First, petitioner argued that counsel was deficient in failing to object to the trial court's off-the-record colloquy with the jury about the need to complete the trial that day. The court rejected the claim on several grounds. First, it noted that in O'Dell, this Court observed that the circumstances "came close" to being improper, but did not in fact hold that the court's statement was improper. Furthermore, the court found from the surrounding circumstances that "counsel reasonably presumed the discussion [with the jury] would focus principally on the likelihood that deliberations would extend beyond the close of court hours on that Friday night" rather than any specific direction to the jury to arrive at a verdict that evening; thus, the court could not conclude that counsel was deficient in failing to raise an objection.

4

Finally, the court concluded that, even if counsel's conduct was deficient, there was no reasonable probability that it affected the verdict. The jury deliberated for about four hours and requested that certain key testimony be replayed before returning a verdict. This undermines any suggestion that the verdict was rushed or coerced. Furthermore, the evidence of guilt was genuinely overwhelming. An entirely disinterested witness who observed the attack gave an account that substantially matched the victim's, testifying that he saw the assailant hit the victim three or four times with something that "looked like it could be a pipe," and saw nothing to indicate the victim had provoked the attack. He also saw the assailant throw an object into the woods. Another witness saw defendant with something in his hand that "looked like a tire iron," observed the injury to victim's head, and reported that the victim had sought shelter in the apartment office while screaming that defendant was "going to kill me." These events were confirmed by still another witness, the apartment manager, who noted the victim's injuries and fear that defendant was trying to kill him. See O'Dell, 2011 WL 4975170, at *1. At the same time, petitioner's claim that the victim had attacked him with a knife, and had suffered his head injuries when he slipped and fell in the snow, was entirely unsupported, and contained numerous discrepancies and contradictions. In addition, the court noted that the duration of the jury's deliberation, and its request for review of certain evidence, demonstrate the jury's careful consideration given that the evidence of defendant's guilt was overwhelming.

Next the court considered petitioner's claim that trial counsel acted below professional standards by eliciting from petitioner on direct examination several prior convictions for burglary, grand larceny, and DUI. Defense counsel testified at the hearing that she routinely had clients admit their prior convictions to dampen the impact of their disclosure as impeachment evidence on cross-examination by the State. Petitioner's expert testified, however, that this was below the standard of care, and the trial court agreed, noting that use of these prior felony convictions to impeach petitioner required a finding under V.R.E. 609(a)(2) that the convictions' probative value outweighed their prejudicial effect, and that competent counsel would have put the State to this test by filing a motion in limine seeking to exclude evidence of the prior convictions before preemptively offering the testimony. Nevertheless, the court noted that the prior convictions were remote in time and unrelated to the current charge, thus rendering any prejudice "less palpable," and concluded that, even without the evidence, the "the jury would have convicted [p]etitioner based on the overwhelming strength of the State's case."

Petitioner's third claim was based on the trial court's denial of petitioner's request to present Dr. Lefebvre's testimony out of order on the first day of trial and counsel's subsequent failure to subpoena him to appear on the second day. The court easily rejected the argument, noting that, as we observed in O'Dell, the doctor's subsequent testimony at the hearing on the motion for new trial "refutes any possible finding of prejudice." 2011 WL 4975170, at *4.

Finally, petitioner claimed that trial counsel rendered ineffective assistance by failing to object immediately to the presence of a crowbar—not the actual weapon used in the assault—that the prosecutor had brought into the courtroom. The prosecutor testified that he placed the crowbar on the clerk's desk; that it was not immediately visible to defense counsel; and that the court ordered it removed when it was brought to his attention by defense counsel. The court found that petitioner had presented insufficient evidence to conclude that the jury saw the crowbar, that trial counsel knew or should have known of its presence earlier, or that counsel was deficient in failing to object sooner. Accordingly, the court denied the petition. This appeal followed.

Petitioner contends the court erred in denying the petition on each of the four grounds, individually or cumulatively, summarized above. The standards governing a claim for post-conviction relief based on ineffective assistance of counsel are well-settled. "[A] defendant who challenges the adequacy of counsel's assistance must show by a preponderance of the evidence, first, that counsel's performance fell below the standard of a reasonably competent attorney, and second, that counsel's failure prejudiced the defendant, i.e., that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." In re Kimmick, 2013 VT 43, ¶ 16, 194 Vt. 53 (citing Strickland v. Washington, 466 U.S. 668, 691-94 (1984)). "A trial court's findings in this context will be upheld absent a showing of clear error, and its conclusions affirmed if reasonably supported by those findings." Id.

Assessed in light of these standards, we affirm the trial court judgment. We address the prior-conviction issue first. Petitioner challenges the court's conclusion that counsel's error was non-prejudicial in light of the overwhelming evidence of guilt, arguing that, in fact, this was a close case "about credibility," and that counsel's error could have affected the result. The record, summarized at length above, does not support the claim. As noted, the victim's account of the assault was substantially supported by several witnesses, including another resident who witnessed the events moments after the assault, a neutral witness who did not know either party and who described defendant hitting the complainant over the head with a long cylindrical object, and the state trooper who described the complainant's injuries.

Moreover, as the trial court noted, defendant himself gave inconsistent accounts of what happened. First, he reported to the 911 operator that the complainant had attacked him with a knife, and then he told the investigating officer that the complainant had hit him in the face. The investigating officer saw no evidence of any injury to defendant's face. Defendant reiterated his claim that the complainant had attacked him with a knife only after the investigating officer reminded him of his initial report to the 911 operator.

In addition, the prior convictions were remote and unrelated to the current charge. The court's conclusion that there was no reasonable probability of a different result is thus well supported.[*]

We reach the same conclusion with respect to petitioner's argument that the court erred in rejecting his ineffective-assistance claim predicated on defense counsel's failure to object to the court's colloquy with the jury. Even assuming that counsel was deficient in this regard, the record amply supports the court's conclusion that no prejudice resulted. As the trial court noted, the evidence of guilt was overwhelming, and the record shows that the jury did deliberate carefully in the face of this overwhelming evidence of guilt.

Petitioner's two remaining claims require no extended discussion. As noted, Dr. Lefebvre's testimony that petitioner suffered a "blunt [force] trauma" to his head was largely consistent with the evidence, and could not remotely have altered the verdict. O'Dell, 2011 WL 4975170, *4. With respect to the crowbar, the record shows that it was placed outside of defense counsel's immediate view, that defense counsel objected to its presence when made aware of it,

---

[*] In light of our conclusion, we need not address the State's argument that the trial court erred in concluding that defense counsel's decision to elicit the prior convictions was below professional standards.

and that the court then ordered its removal. Thus, there is no basis for a finding of unprofessional conduct. Petitioner's additional argument that the crowbar was viewed by the complaining witness, that this could have affected his testimony, and that counsel was deficient in failing to raise this specific objection at trial is not supported by the record, and was not clearly raised below. Accordingly, we affirm the trial court's judgment.

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Beth Robinson, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice

7