2013 VT 57

## State of Vermont v. Jason Johnstone

[75 A.3d 642]

No. 11-246

Present: **Reiber, C.J., Dooley, Burgess and Robinson, JJ., and Kupersmith, Supr. J., Specially Assigned**

Opinion Filed August 2, 2013

*Kristin G. Wood*, Washington County Deputy State's Attorney, Barre, for Plaintiff-Appellee.

*Allison N. Fulcher* of *Martin & Associates*, Barre, for Defendant-Appellant.

¶ 1. **Robinson, J.** The critical question in this case is whether a probationer can be charged with violating a probation condition prohibiting "violent or threatening behavior" on the basis of menacing statements he made about his probation officer without any evidence that he intended for his probation officer to hear or learn of the statements. We conclude that the State's allegations did not make out a prima facie case of a probation violation and accordingly reverse.

¶ 2. After pleading guilty to several charges stemming from different incidents, defendant Jason Johnstone was sentenced, in January 2011, to twenty days to serve on a work crew with the balance of his two-to-twelve-month sentence suspended with probation. One of his probation conditions, standard "Condition M," provided, "Violent or threatening behavior is not allowed at any time." Defendant's probation officer testified that she reviewed the

conditions with defendant on the date of sentencing and that defendant signed and acknowledged that he read and understood each condition.

¶ 3. Three months later, defendant's probation officer filed a complaint alleging various violations of probation (VOPs). The day after his arraignment for those VOPs, defendant's probation officer filed a second VOP complaint alleging a violation of Condition M on account of statements defendant made after the arraignment. That second VOP is the subject of this appeal.

¶ 4. The complaint alleges that following his arraignment on the first set of probation violations, while his probation officer spoke to him about the conditions the officer would be imposing, defendant was angry. Defendant said to his probation officer, among other things, "You took my [expletive] baby sitter away from me, I hope you are [expletive] happy." There is no allegation that he threatened harm to his probation officer at that time.

¶ 5. After this exchange in the courthouse, defendant and his probation officer parted ways. The probation officer exited the court building through the back door, while defendant and his ex-girlfriend presumably left through the front. As the probation officer slowly walked toward the front of the courthouse she could hear defendant and his ex-girlfriend yelling in front of the courthouse. Defendant continued to shout expletives concerning his treatment by the probation officer and the court. The probation officer heard defendant and his ex-girlfriend talking about calling the media and the Commissioner of Corrections, and at one point heard defendant say that his probation officer was "going to end up in a body bag." There is no allegation that defendant saw his probation officer coming up the side of the building, knew the probation officer was within earshot, or intended for his probation officer to hear the statements firsthand or even indirectly. The "body bag" comment was the basis for the second VOP.

¶ 6. Defendant moved to dismiss the second VOP complaint, relying heavily on our decision in *State v. Sanville*, 2011 VT 34, 189 Vt. 626, 22 A.3d 450 (mem.). In *Sanville*, we concluded that Condition M was too vague to fairly inform the defendant that his expression of "displeasure at a perceived injustice" — consisting of what this Court described as "mouthy and obnoxious" statements to his landlord — would subject him to a loss of freedom. *Id.* ¶¶ 10-11. Defendant argued that his alleged statement here

was likewise nothing more than "mouthy," "obnoxious," and "blustering about a perceived injustice." In light of our decision in *Sanville*, defendant argued, Condition M is too vague to fairly warn him that his statements were prohibited. The court denied the motion.

¶ 7. Subsequently, the parties presented the court with a proposed plea agreement pursuant to which defendant would plead guilty to a charge and admit two probation violations, and the State would dismiss the second VOP relating to the body-bag comment. When the court asked the parties about the second VOP, defense counsel explained that the agreement contemplated dismissal of that complaint because the conviction would be appealed if the VOP relating to the body-bag comment were included. The court concluded that it would reluctantly accept the proposed plea agreement if defendant admitted to the VOP relating to the body-bag statement as part of the package. The court explained, "[I]t's important that he take responsibility for this misconduct here. If he wants to appeal, he's certainly welcome to do that."

¶ 8. Defendant agreed to admit to the second VOP as part of the overall deal. In the Rule 11 colloquy between the court and defendant regarding the alleged violation, defendant admitted to the facts alleged in the second VOP complaint and the court advised defendant that, although he was giving up his right to a merits hearing on the second VOP "on those two theories that we talked about,"[1] and there would not be any further proceedings in the trial court, he was "at liberty to take an appeal if [he] want[s]." At no time did the State object to or dispute the court's proposed extension of defendant's right to appeal. After being told that he could appeal, defendant admitted to the second VOP complaint. The court again reiterated that he could appeal the finding of violation if he wished. This appeal followed.

---

[1] As noted above, defendant primarily argued in connection with the motion to dismiss that, under *Sanville*, Condition M was too vague to encompass the kind of mouthy, obnoxious expression of opinions about a perceived injustice. The "second" theory is not entirely clear from the record. The court may have been referring to the argument that words alone cannot constitute "threatening behavior" — an argument referenced in the court's decision, but not argued by defendant on appeal.

## I.

¶ 9. The State argues that defendant, having admitted to the violation, cannot now challenge on direct appeal the factual basis for his conviction. Defendant counters that he admitted to the violation based on the body-bag comment only after the court assured him that after his admission he could appeal the legal rulings underlying the court's earlier refusal to dismiss the charge. If those assurances were wrong, defendant argues, his misunderstanding to the contrary rendered his admission unknowing and involuntary. In that event, the State answers, defendant's avenue for relief is limited to a timely motion to withdraw his plea based on facts yet to be found relating to the change-of-plea proceeding, with the possibility of an appeal afterward from any adverse ruling.

¶ 10. We might be persuaded that no direct appeal lies from his change of plea if defendant were simply alleging a violation of Rule 11 change-of-plea procedures, but that is not the crux of his claim. It is clear from the record that, instead, defendant seeks to appeal from what was, essentially, a conditional plea by which he reserved the right to appeal a contested issue of law while admitting to the facts as charged. The State did not object below to the court's repeated assurances to defendant that, despite admitting to the factual allegations, he retained his right to appeal the court's legal rulings upholding the charge, and the State does not now challenge defendant's characterization of the discussions surrounding defendant's admission of the second VOP.

■ ■ ¶ 11. Conditional pleas reserving issues for appeal are not uncommon. Vermont Rule of Criminal Procedure 11(a)(2) provides that, "[w]ith the approval of the court and the consent of the state, a defendant may enter a conditional plea of guilty . . . , reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion." Plea agreements are contractual in nature and are interpreted according to contract law. *State v. Byrne*, 149 Vt. 224, 225-26, 542 A.2d 276, 277 (1988). The parties are entitled to rely upon the express terms of the agreement. *State v. Parker*, 155 Vt. 650, 651, 583 A.2d 1275, 1276 (1990) (mem.). Although Rule 11 refers to conditional pleas made in writing, the absence of a writing does not negate a conditional plea when "[t]he plea hearing transcript plainly shows that both parties agreed to the

conditional plea, that the . . . court accepted the plea, and that the court understood its ruling on [defendant's] motion to dismiss was the specific (and dispositive) issue for appeal." *United States v. Yasak*, 884 F.2d 996, 1000 (7th Cir. 1989).

■ ¶ 12. Here, the change-of-plea transcript plainly reflects the elements of the court's offer, defendant's acceptance, and the State's acquiescence. The trial court would not accept the plea agreement without an admission to the second VOP, and repeatedly told defendant he could still appeal the court's denial of his motion to dismiss. Defendant agreed. The State voiced no objection. The parties proceeded with the change-of-plea on those terms. On the whole record, there could have been no misunderstanding that defendant's admission to the second VOP was explicitly conditioned on the reservation of his right to appeal the court's adverse ruling on his dismissal motion. For that reason, our review of that appeal is not improper.[2]

## II.

¶ 13. That brings us to the merits of defendant's claim that the court erred in finding a prima facie case to support the second VOP. Defendant characterizes his behavior as merely an expression of anger about the first VOP complaint and argues that, according to *Sanville*, Condition M did not sufficiently notify him that his comments were prohibited.

¶ 14. We review the court's decision against dismissing the VOP complaint under Vermont Rule of Criminal Procedure 12(d)(2), providing that a prima facie case lies when there is "substantial, admissible evidence as to the elements of the offense challenged . . . sufficient to prevent the grant of a motion for judgment of acquittal at the trial." Accordingly, the State survives a motion to dismiss for lack of a prima facie case by showing that the evidence, taken in the light most favorable to the State, and excluding modifying evidence, can fairly and reasonably show that defendant committed the alleged violation. We consider the legal

---

[2] Defendant argues that his guilty plea should be vacated because it was not made knowingly and voluntarily. In particular, defendant argues that he admitted to the VOP in reliance on the court's advice that he could still appeal the legal basis for the VOP; to the extent that he could not actually appeal because his plea effectively waived his right to appeal, his guilty plea was involuntary. Because we conclude that defendant's plea was conditional and did expressly reserve his right to appeal the legal basis for the VOP, we need not address defendant's argument.

question — whether in light of *Sanville* and other applicable law the State's allegations were sufficient to support a prima facie case of a violation of Condition M — de novo. See *In re Crannell*, 2012 VT 85, ¶ 5, 192 Vt. 406, 60 A.3d 632 (reiterating that application of governing legal standard is nondeferential question for this Court).

¶ 15. In *Sanville*, we explained:

To be charged with violating probation, a defendant must have notice before the initiation of a probation revocation proceeding of what circumstances will constitute a violation of probation. Due process requires that such notice inform him as to what acts may constitute a violation of his probation, thereby subjecting him to loss of liberty. While the notice may come in the form of a probation order presented for the defendant's signature, still, the defendant is entitled to know what conduct is forbidden before the initiation of a probation revocation proceeding.

2011 VT 34, ¶ 8 (quotations and citations omitted).

¶ 16. In that case, we considered the same probation condition — Condition M — as we consider here. The defendant in that case had had a series of sometimes heated arguments with his landlord. *Id.* ¶ 3. In one exchange, the defendant said that he was going to "kick [landlord and her husband's] butts." *Id.* During a particularly heated exchange, the defendant told the landlord he was going to burn down the trailer. *Id.* We did not reach the question of whether verbal statements alone can constitute "threatening behavior" for the purposes of probation conditions. *Id.* ¶ 7. Instead, we concluded that, as written, Condition M "did not afford [the] defendant a reasonable opportunity to know what actions were prohibited, so that he might act accordingly." *Id.* ¶ 10 (quotation and alterations omitted). As in *Sanville*, we need not visit the question of whether verbal statements alone can violate Condition M because the notice provided by that condition to the defendant in the *Sanville* case is indistinguishable from that provided to defendant in this case.

¶ 17. If anything, this case is easier than *Sanville* — not because the suggestion that the probation officer was going to end up in a body bag was not menacing or concerning, but because,

even assuming for the purposes of this analysis that verbal statements can violate Condition M, there is no allegation that defendant knew that the target of his statements was within earshot. He was "mouthing off" to his ex-girlfriend; the State has not alleged that his statements were in any way directed at anyone else. We have recognized that even an expression of a desire or plan to harm someone cannot reasonably be treated as a threat under Condition M "[w]ithout a finding that [the] statement represented an actual intent to put another in fear of harm or to convey a message of actual intent to harm a third party." *State v. Miles*, 2011 VT 6, ¶¶ 7-8, 189 Vt. 564, 15 A.3d 596 (mem.) (reversing VOP based on Condition M where obviously delusional individual subject to Condition M told nurse in mental health unit of state correctional facility that he wanted to kill "someone named Bill from Evergreen" and that "earth goddess" had visited him recently and told him it was okay to do so).

¶ 18. If the State had alleged that defendant directed his comments to the probation officer, or even that he knew she was in earshot, this might be a very different case. But even accepting as true all of the allegations included in the State's VOP complaint and admitted by defendant, those facts alone could not support a finding that defendant intended to put his probation officer in fear of harm or to convey a message of actual intent to harm her. *Id.*

*Reversed.*

¶ 19. **Dooley, J.,** concurring. I fully concur in the opinion for the court. I add only my view that Condition M should be modified to avoid the interpretation issues that have plagued its enforcement. Condition M has become part of the standard form probation conditions imposed in every case. It is, however, not required by statute, see 28 V.S.A. § 205(c)(1), nor on the list specifically authorized by statute, *id.* § 252(b). Thus, its use is entirely within the control of the judiciary.

¶ 20. As the cases discussed in the majority opinion demonstrate, the application and interpretation of Condition M have been challenged primarily in cases where the probation officer has alleged that the probationer engaged in "threatening behavior," but the "behavior" involved has been primarily or exclusively speech. On the one hand, the prosecution argues that speech is behavior and, on the other, the defendant argues it is not. The cases have tried to find a middle ground between these positions, and the results are not always predictable.

¶ 21. It is clear to me that the need is for better language that anticipates the interpretation difficulties and defines more specifically the coverage of the condition. If we are to have judiciary-created standard probation conditions, imposed in every case, we must take more seriously our obligation to improve and correct them where our enforcement experience shows that improvement or correction is needed. Language clarification is a better course of action than regular appeals raising variations of the same question that do not lead to a comprehensive solution.

¶ 22. Wouldn't it be nice if this were the last decision of this Court on the meaning of Condition M because Condition M is amended to eliminate the interpretation questions?

¶ 23. I am authorized to state that Judge Kupersmith joins this concurrence.

¶ 24. **Burgess, J.,** dissenting, in part.[3] If the threatening nature of declaring one's probation officer would "end up in a body bag" was not apparent to defendant, as supposed by the majority, his obliviousness was not evident from his motion to dismiss. Nor was any lack of intent to convey this message to his probation officer apparent from the circumstances alleged. In response to the dismissal motion, the State offered proof that probation Condition M expressly warned defendant that threatening behavior was prohibited and that defendant nevertheless delivered a loud and angry tirade against the officer culminating in the not-too-subtle prediction of her demise. Viewed in the light most favorable to the State, and regardless of whether the officer was immediately present to receive the threat firsthand, this evidence was sufficient to support the charge that defendant engaged in threatening behavior in violation of probation (VOP), and the trial court so ruled. Because defendant reserved only the right to challenge the State's prima facie case on appeal, and the trial court's ruling on this point was not in error, I respectfully dissent from reversing his conditional admission to the VOP.

¶ 25. Invoking *State v. Sanville*, 2011 VT 34, 189 Vt. 626, 22 A.3d 450 (mem.), defendant sought dismissal only on the grounds that Condition M was overly vague and because his comment was merely "mouthing off," rather than intended to convey a threat. The majority, like defendant, takes *Sanville* out of the context of

---

[3] I fully concur with the majority's view that defendant preserved his challenge for appeal by the terms of his conditional plea. *Ante*, ¶¶ 9-12.

its facts to condemn Condition M as inherently vague for failing to "afford defendant a reasonable opportunity to know what actions were prohibited, so that he might act accordingly." *Id.* ¶ 10 (quotation and alterations omitted); *ante,* ¶ 16. What *Sanville* actually referred to was a failure of Condition M to "fairly inform" a probationer that merely "mouthing off" with "bluster[ing]," "mouthy," and "obnoxious" statements would violate probation, 2011 VT 34, ¶¶ 9-11, in contrast to actual threats that "communicate intent to inflict physical or other harm." *Id.* ¶ 12 (quotation omitted). It is beyond cavil that behavior neither communicating, nor intended to communicate, such a threat is not "threatening behavior" prohibited by Condition M, and given the putative victim's own perception in *Sanville* that the probationer was only "mouthing off," this Court found there was no threat. *Id.* ¶¶ 9-10.

¶ 26. In the trial court below, on a motion to dismiss, there was no such evidence from the probation officer or defendant, and there was no such finding. Rather, the court determined the proffered evidence sufficient to prove threatening behavior. The court observed, not surprisingly, that if threatening behavior is a "communicated intent to inflict physical or other harm" as defined in *State v. Ashley,* 161 Vt. 65, 72, 632 A.2d 1368, 1372 (1993), *superseded by statute,* 13 V.S.A. § 7554, then ranting against and "threatening to put your probation officer into a body bag would seem to meet this standard." Such a particularized description of one's own intent is preponderant evidence of an express threat, see *State v. Blaise,* 2012 VT 2, ¶ 12, 191 Vt. 565, 38 A.3d 1167 (mem.) (confirming standard of proof in VOP proceedings is preponderance of evidence), and an intentional death threat objectively falls within Condition M's proscription against threatening behavior. The court's conclusion is supported by the evidence.

¶ 27. Similarly, defendant's declaration that the officer "was going to end up in a body bag" was also prima facie evidence of a communicated intent to harm the officer. For a "true threat," the State must prove a deliberate and serious expression of intent to commit unlawful violence against a particular person, but need not prove actual intent to carry out the threat. *Virginia v. Black,* 538 U.S. 343, 359-60 (2003). The trial court's decision reflects that the State's evidence was sufficient on this point as well, describing defendant as enraged at his probation officer in the moments leading up to his explicit prediction that the officer would end up in a body bag, and finding that dire allusion practically indistin-

guishable from a death threat. Again taking the evidence in a light most favorable to the State and excluding defendant's characterization of his conduct as "blustering," as we must in reviewing the denial of the motion to dismiss, see V.R.Cr.P. 12(d)(2); *State v. Stamper*, 2011 VT 18, ¶ 3, 189 Vt. 583, 15 A.3d 142 (mem.); *Blaise*, 2012 VT 2, ¶ 12, nothing in the court's ruling is clearly erroneous.

¶ 28. Defendant's claim of a nonthreatening intent and other modifying evidence was not properly before the trial court at the motion to dismiss, and is not properly before the majority today. If defendant wanted the court to weigh his claimed subjective intent to just rail against the injustice of the situation, rather than communicate a threat to the probation officer, he was free to explain his nobler objective at a merits hearing. Defendant chose not to do so. Considering only defendant's expressed malevolence, without his countervailing nuance of "blustering," the trial court's understanding of the declaration as a threat was facially supported by animus evident in defendant's demeanor and choice of words.[4] See *Miles*, 2011 VT 6, ¶ 8 (citing *Doe v. Pulaski Cnty. Special Sch. Dist.*, 306 F.3d 616, 622-24 (8th Cir. 2002) (en banc), for the proposition that "in determining whether statements are true threats of physical violence unprotected by First Amendment, courts must examine speech in light of entire factual context and consider several factors, including whether objectively reasonable person would view message as serious expression of intent to harm").

¶ 29. That defendant intended the officer to get the message was at least one logical inference to draw from the declaration and circumstances alleged. Defendant was not complaining in general, but focusing his remarks on the officer. His threat was loudly proclaimed just outside the courthouse, immediately following an adversarial court proceeding involving his probation officer and where the officer could hear the threat directly, as she did walking around the corner, or was at least likely to hear it indirectly through others. Given the forum, volume, and context,

---

[4] Reversing the trial court for failing to find a real threat as was required for a VOP in *State v. Miles*, 2011 VT 6, ¶ 8, 189 Vt. 564, 15 A.3d 596 (mem.), is also mistaken. Since probationer did not challenge the VOP on that basis, no such determination was needed to deny the motion to dismiss and there was no suggestion, as was obvious from the record in *Miles*, that probationer was delusional if not insane.

that defendant would not expect the officer to hear of his threat was patently unlikely. Thus, the majority's view that prima facie evidence is missing on this element is wrong.[5]

¶ 30. Justice Dooley's concurring reiteration that Condition M is fatally vague is similarly unfounded, particularly on the record presented. The meaning of Condition M is not so opaque as to compel ordinary readers to consult their law libraries to divine its mysteries. Common and even marginal sense would put probationers on fair notice that threatening their probation officers with death qualified as "threatening behavior" prohibited by Condition M. Absent credible evidence to the contrary, what part of that behavior is not threatening? What is it about an antagonist, known to be assaultive, declaring loudly in a public place that the officer would end up dead that is not threatening? Where is the danger of confusion with innocent conduct? Condition M cannot be confused with bluster, because bluster reflects no actual intent to put another in fear of harm as required for a threat. Under the circumstances before the trial court, and this Court, Condition M is in no need of clarification.

¶ 31. I am authorized to state that Chief Justice Reiber joins this dissent.

---

[5] Moreover, Condition M prohibits violent and threatening behavior "at any time," and unlawful threats do not require the personal presence of the target. See *United States v. Martin*, 163 F.3d 1212, 1216 (10th Cir. 1998) (stating in the context of 18 U.S.C. § 115, prohibiting threats against federal officials, that "[t]his court has not required that true threats be made directly to the proposed victim"); *United States v. Raymer*, 876 F.2d 383, 391 (5th Cir. 1989) (declaring that actual receipt of threat is not required to prove defendant threatened probation officer in violation of 18 U.S.C. § 115); *United States v. Hinkson*, 349 F. Supp. 2d 1350, 1354, 1357 (D. Idaho 2004) (direct communication of threat to target unnecessary under 18 U.S.C. § 115); see also *Commonwealth v. Hokanson*, 907 N.E.2d 674, 678 (Mass. App. Ct. 2009) (clarifying, in context of threatening to commit crime against another, that while "communication is a critical element of the threat," it can be uttered indirectly to "one who the defendant intends to pass it on to the target, or to one who the defendant should know will probably pass it on to the target" (quotation omitted)).