NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 65

No. 2019-034

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Rutland Unit, |
| | Criminal Division |
| | |
| Michael Harwood | December Term, 2019 |

Thomas A. Zonay, J.

Ian C. Sullivan, Chief Deputy State's Attorney, and Victoria Santry, Law Clerk, Rutland, for
  Plaintiff-Appellee.

Matthew Valerio, Defender General, and Rebecca Turner, Appellate Defender, Montpelier, for
  Defendant-Appellant.


PRESENT: Reiber, C.J., Robinson, Eaton and Carroll, JJ., and Morris, Supr. J. (Ret.),
         Specially Assigned


¶ 1. **CARROLL, J.** Defendant Michael Harwood appeals from the trial court's decision concluding that he violated Condition N of his probation, which prohibited "violent or threatening behavior," by verbally threatening a corrections officer. On appeal, defendant argues that the trial court erred because threatening behavior requires some accompanying physical conduct. If verbal statements qualify as threatening behavior, defendant alternatively argues that he did not receive adequate notice that his verbal statements could result in a violation of probation. We affirm.

## I. Factual and Procedural Background

¶ 2.    The record indicates the following.  On July 28, 2017, defendant was charged by information with one count of aggravated domestic assault, 13 V.S.A. § 1043(a)(2), and two counts of disturbing the peace by phone, 13 V.S.A. § 1027(a).  An affidavit accompanying the information alleged that on the evening of July 21, 2017, defendant saw his ex-girlfriend in Poultney, Vermont outside a convenience store.  Defendant entered his ex-girlfriend's car and "told her to drive around back because he needed to get his coat."  Although defendant's ex-girlfriend drove defendant around back so he could grab his belongings, she refused to take defendant anywhere else.  After she refused again, defendant, while holding a large folding knife in front of him, told her that he was going to hurt her if she did not drive him to Arlington, Vermont.

¶ 3.    The affidavit further alleged that on July 24, 2017, defendant's ex-girlfriend reported receiving several threatening and disturbing messages from defendant via Facebook Messenger.[1]  Defendant sent a message telling his ex-girlfriend that "I promise you your family has never seen the storm that's about to come, . . . you did this to me, dead or in jail are my options I have, I have nothing because of you."  Defendant also sent a message saying he "almost got shot the other night," he "could have died," and if he did, it would have been his ex-girlfriend's fault because she put him in the situation.  On July 27, 2017, defendant's ex-girlfriend reported receiving additional threatening messages, including several that had gun emojis.[2]

¶ 4.    Based on the foregoing, on May 16, 2018, defendant pleaded guilty to first-degree aggravated domestic assault with a weapon, 13 V.S.A. § 1043(a)(2), for threatening to use a deadly

---

[1]  "Facebook Messenger is the messaging application associated with the Facebook social media platform.  The format of the messages is analogous to a text message."  State v. Legassie, 2017 ME 202, ¶ 5 n.3, 171 A.3d 589.

[2]  An emoji is a "small digital image or icon used to express an idea, emotion, etc., in electronic communications."  Emoji, Oxford English Dictionary (3rd ed. 2013), https://www.oed.com/view/Entry/389343 [https://perma.cc/W4LW-LQTF].

2

weapon on his ex-girlfriend.  Defendant received a sentence of eighteen months to six years, all suspended except for one year to serve.  As part of the plea agreement, defendant was placed on probation under standard and special conditions and the two counts of disturbing the peace by phone were dismissed.  At the plea hearing, the court specifically asked defendant if he understood the conditions that were imposed pursuant to the agreement:

> The court:  Do you understand that probation conditions would be that you notify your probation officer within forty-eight hours if arrested or given a citation for a new offense, you must not be convicted of another crime, meet with your PO or designee when told to do so.  If you change your address or move, you must tell your PO within two days.  If you change or lose your job, you must tell your PO within two days.
>
> Upon request and without delay, you must allow your PO to visit you wherever you're staying, and violent or threatening behavior is not allowed at any time.
>
> Do you understand that?
>
> The defendant:  Yes.
>
> The court:  There will be a condition that you must attend and participate in mental-health counseling if directed to do so and complete it to your PO's satisfaction.
>
> You must allow any treatment or counseling program to tell your probation officer in court about your attendance and participation.
>
> You must obey any curfew as directed.
>
> You must actively participate in violence counseling for anger management and/or domestic violence . . . .
>
> You may not harass or cause to be harassed the victim, the victim's family, or any prosecution witness.
>
> You shall not contact the victim or victim's family nor enter the victim's home, school, or business without both the permission of your probation officer and the victim's prior written consent filed with your PO, and then only by the terms of the consent.
>
> You have to live in an approved residence and probation shall not withhold approval unless there are legitimate and reasonable concerns that a residence will impact public safety or increase

3

probability of recidivism, and you must submit to electronic monitoring at the direction of your probation officer.

Is that your understanding of the agreement?

The defendant: Yes.

The probation order that issued the same day included the above conditions and provided the following at the end of the order: "I understand these conditions and I agree to follow them. I understand that if I do not follow these conditions, the court may require me to serve my full sentence in jail." Defendant signed the probation order on June 6 while he was incarcerated at Southern State Correctional Facility.

¶ 5. About a week later, while defendant was in his cell, a corrections officer and a unit supervisor saw defendant squirting water out under his cell door. The corrections officer first spoke with defendant and warned him the facility would not tolerate this behavior. Defendant then became "verbally assaultive." The unit supervisor reminded defendant that he could violate his probation if he continued to engage in this behavior. Defendant responded flippantly and loudly yelled several expletives at the supervisor. The corrections officer—face-to-face with defendant, though separated by defendant's cell door—reminded him that this comment could result in disciplinary reports, which could extend his incarceration. Defendant replied that he would stab someone if he was held past his release date and threatened that he would have his gang go to the corrections officer's house and they would "get it done just like they do in New York." Defendant said that he could easily find the officer after his release because corrections officers are "dumb" and put their full names on disciplinary reports. The corrections officer considered defendant's statements a threat and was concerned defendant would physically execute his verbal threat upon his release from the facility.

¶ 6. Based on this incident, defendant's probation officer filed a Probation Violation Complaint alleging that defendant violated Condition N by threatening the corrections officer. At

4

the merits hearing on the probation violation, the State, citing State v. Johnstone, 2013 VT 57, 194 Vt. 230, 75 A.3d 642, argued that defendant's statements constituted a threat and "he was on sufficient notice that saying things like he would stab someone if he had to serve for six years . . . could be viewed as threatening." On the other hand, defendant, citing State v. Schenk, 2018 VT 45, 207 Vt. 423, 190 A.3d 820, argued that his behavior could not qualify as threatening because threatening behavior requires accompanying conduct.

¶ 7. In a written order issued a few days later, the trial determined that defendant violated Condition N. The court concluded that defendant was on notice of what behaviors could violate Condition N because he received, reviewed, and signaled that he understood that he was subject to the condition. The trial court also concluded that defendant's verbal statements qualified as threatening because the defendant intended to put the corrections officer in fear of harm and/or to convey a message that he intended to harm the corrections officer upon his release from prison. The court found that defendant used a loud tone of voice, faced the corrections officer on the other side of the cell door, and intentionally directed a verbal threat to him. Additionally, the court observed that defendant made the threat after the corrections officer and the unit supervisor warned him about the potential consequences of his behavior.

¶ 8. Although the court acknowledged that, in Schenk, we defined threatening behavior under Vermont's disorderly-conduct statute to require accompanying conduct, the court concluded that Schenk did not apply in the probation context. The court reasoned that Schenk recognized the disorderly-conduct statute and probation conditions as two "distinct contexts" for the definition of threatening behavior. The court also explained that Schenk adopted a "narrowed" definition of "threatening behavior" in part to avoid constitutional infirmity under the First Amendment. Those same First Amendment concerns, the court explained, do not apply in probation cases because probation conditions may lawfully impact a probationer's First Amendment rights. Based on these

5

legal conclusions, the trial court revoked defendant's probation and imposed the underlying sentence of eighteen months to six years.

¶ 9. On appeal, defendant argues the trial court erred in holding that his verbal statements qualified as threatening behavior. Citing Schenk, defendant argues that "threatening behavior" requires "physical force or physical conduct which is immediately likely to produce the use of such force." Schenk, 2018 VT 45, ¶ 32. Alternatively, defendant argues that he was not on notice that verbal statements could constitute threatening behavior.

¶ 10. We conclude that defendant's verbal statements to the corrections officer qualified as threatening behavior. We also conclude that defendant was on sufficient notice that verbal statements could qualify as threatening behavior. We accordingly affirm the trial court's conclusion that defendant violated probation Condition N.

## II. Standard of Review

¶ 11. A trial court's conclusion that a defendant violated a probation condition is a mixed question of law and fact. State v. Anderson, 2016 VT 40, ¶ 11, 202 Vt. 1, 146 A.3d 876. "The trial court first makes a factual determination of the probationer's actions and then makes an implicit legal conclusion that the probationer's actions violated his probationary terms." State v. Sanville, 2011 VT 34, ¶ 7, 189 Vt. 626, 22 A.3d 450 (mem.). On review, we uphold the trial court's findings if supported by credible evidence, and uphold the trial court's legal conclusions if they are "reasonably supported by the findings and [do] not constitute an erroneous interpretation of the law." State v. Kane, 2017 VT 36, ¶ 14, 204 Vt. 462, 169 A.3d 762 (alteration in original) (quotation omitted).

¶ 12. Defendant does not challenge the trial court's factual findings on appeal. Rather, he challenges the trial court's legal conclusions that his verbal statements constituted threatening behavior and that he was on notice that such statements could violate Condition N. These are legal questions we consider de novo.

6

¶ 13.   Defendant relies primarily on our decision in <u>Schenk</u>, where we held, in the context of Vermont's disorderly-conduct statute, that threatening behavior requires "physical force or physical conduct which is immediately likely to produce the use of such force." <u>Schenk</u>, 2018 VT 45, ¶ 32.  Defendant argues that the definition of threatening behavior outlined in <u>Schenk</u> applies in both the probation-condition and criminal-statute context.  Applying this definition, defendant argues that the trial court erred in holding that his verbal statements to the corrections officer qualified as threatening behavior.[3]   Alternatively, if verbal statements qualify as threatening behavior under Condition N, defendant argues he did not receive adequate notice.  We address each argument in turn.

### A.  Interpretation of Condition N

¶ 14.   This Court has repeatedly declined to address whether verbal statements can qualify as threatening behavior in the probation context.  See <u>Johnstone</u>, 2013 VT 57, ¶ 17 (assuming, without deciding, that verbal statements could violate probation condition prohibiting violent or threatening behavior); <u>State v. Miles</u>, 2011 VT 6, ¶ 8, 189 Vt. 564, 15 A.3d 596 (mem.) ("The question of whether verbal threats constitute threatening behavior in the context of probation conditions has yet to be decided by this Court." (quotation omitted)); <u>Sanville</u>, 2011 VT 34, ¶¶ 6-7 (recognizing, despite several nonprecedential three-Justice decisions, that "question of whether verbal threats constitute threatening behavior in the context of probation conditions has yet to be decided by this Court" (quoting <u>State v. Gilbert</u>, 2009 VT 7, ¶ 7, 185 Vt. 602, 969 A.2d 125 (mem.))).[4]

---

[3]  Defendant's argument is that his verbal statements did not qualify as threatening behavior based on how the term "threatening behavior" was defined in <u>Schenk</u>.  He does not argue that a condition prohibiting verbal statements would violate his First Amendment rights.

[4]  In <u>State v. Bessette</u>, No. 2007-279, 2008 WL 2766845 (Vt. June 19, 2008) (unpub. mem.),          https://www.vermontjudiciary.org/sites/default/files/documents/eo07-279.pdf

¶ 15.    Notwithstanding these cases, defendant argues that our decision in <u>Schenk</u> controls the question of whether verbal statements can qualify as threatening behavior in the probation context.  We disagree.  Although we discussed cases in <u>Schenk</u> that addressed the meaning of threatening behavior in the probation context, we expressly explained that we were addressing only the meaning of threatening behavior under the disorderly-conduct statute.  <u>Schenk</u>, 2018 VT 45, ¶ 36 ("Our ruling today is only that defendant's conduct does not violate the specific statute under which he was charged . . . .").[5]  <u>Schenk</u> expressly did not address the meaning of threatening behavior in the probation context.

¶ 16.    Nor does it make sense to adopt <u>Schenk</u>'s definition of threatening behavior in the probation context.  <u>Schenk</u> interpreted threatening behavior in the context of the disorderly-conduct statute based on specific considerations that that are inapplicable to the probation context. First, <u>Schenk</u> construed the term "threatening behavior" to proscribe conduct, not speech, in part to avoid constitutional infirmity under the First Amendment.  <u>Schenk</u>, 2018 VT 45, ¶ 13 (acknowledging that "disorderly conduct statutes have long raised free speech concerns" (alteration and quotation omitted)).  Different First Amendment considerations apply in the probation context because probationers "do not possess the absolute liberty enjoyed by law-

---

[https://perma.cc/UPW3-TLT9], a three-Justice panel held that a defendant violated his probation by engaging in threatening behavior—namely, by leaving a message on someone's phone.  <u>Id</u>. at *1.  Because <u>Bessette</u> was a decision by a three-Justice panel, it is not mandatory authority on the issue of whether verbal statements can qualify as threatening behavior in the probation context. See V.R.A.P. 33.1(d) (explaining that "[a]n unpublished decision by a three-justice panel may be cited as persuasive authority but is not controlling precedent").

   [5]  In <u>Schenk</u>, we referred to <u>Sanville</u>—a case interpreting the meaning of threatening behavior in the probation context—as a "controlling precedent."  <u>Schenk</u>, 2018 VT 45, ¶¶ 14-16. We did so because in <u>Sanville</u>, "the State argued that the probationer had committed the crime of disorderly conduct under 13 V.S.A. § 1026(a)(1) by engaging in threatening behavior, and that this crime constituted the basis for his probation violation."  <u>Id</u>. ¶ 15.  We explained in <u>Sanville</u> that defendant's verbal statements could not give "rise to a charge of disorderly conduct under 13 V.S.A. § 1026" because § 1026(a) prohibits conduct, not speech.  <u>Sanville</u>, 2011 VT 34, ¶ 12. <u>Sanville</u> was accordingly only a controlling precedent in <u>Schenk</u> to the extent it construed the disorderly-conduct statute.

8

abiding citizens." Kane, 2017 VT 36, ¶ 27. Probation conditions may impede a probationer's constitutional rights. See, e.g., id. ¶ 29 (recognizing that courts have generally "concluded that the government's dual interests in monitoring probationers—rehabilitation and protecting society from future criminal violations—permits some intrusion into a probationer's privacy that would otherwise violate the Fourth Amendment"). Applying this analysis to the First Amendment, we have recognized that "[p]robation conditions may impact upon a probationer's First Amendment rights so long as the conditions have a reasonable nexus with rehabilitation of the defendant and protection of the public." State v. Lockwood, 160 Vt. 547, 560, 632 A.2d 655, 663 (1993) (quotations omitted). Because probationers have diminished First Amendment protections, Schenk's reasoning for its definition of threatening behavior is inapplicable to the probation context.

¶ 17.    Second, Schenk adopted the physical-force requirement because the disorderly-conduct statute is designed to target "public nuisance." Schenk, 2018 VT 45, ¶ 25 (quotation omitted). We explained that the physical-force requirement fulfilled "the statute's intent," which was "less about protecting individuals from threats and more about protecting the public from breaches of the public order caused by threats." Id. Probation conditions, by contrast, are imposed to both rehabilitate defendants and protect society from defendants' potentially dangerous behavior. Lockwood, 160 Vt. at 560, 632 A.2d at 663. Consistent with these purposes, trial courts have "broad discretion in setting conditions of probation." Id. Trial courts may impose any condition "reasonably related" to a defendant's rehabilitation. 28 V.S.A. § 252(b)(18); see also id. § 252(a) ("The conditions of probation shall be such as the court in its discretion deems reasonably necessary to ensure that the offender will lead a law-abiding life or to assist the offender to do so."). Given the distinct purposes behind probation and the disorderly-conduct statute, it makes no sense to adopt Schenk's definition of threatening behavior in the probation context.

9

¶ 18.     In sum, because Schenk decided only the meaning of threatening behavior under the disorderly-conduct statute, and adopted the physical-force requirement based on specific considerations that apply differently in the probation context, we conclude that Schenk does not control in the probation context. We reiterate that Schenk expressly decided only "that defendant's conduct [did] not violate the specific statute under which he was charged." Schenk, 2018 VT 45, ¶ 36.

¶ 19.     Although we have not decided whether verbal statements alone can support a finding of threatening behavior in the probation context, we have interpreted the meaning of the term threatening behavior within that context. In these decisions, we applied the same definition for threatening behavior—that is, we assumed that verbal statements could qualify as threatening behavior if the statements communicated "an actual intent to put another in fear of harm or to convey a message of actual intent to harm a third party." Johnstone, 2013 VT 57, ¶ 17 (quotation omitted); Miles, 2011 VT 6, ¶ 8 ("Without a finding that [defendant's] statement represented an actual intent to put another in fear of harm or to convey a message of actual intent to harm a third party, the statement cannot reasonably be treated as a threat."); Sanville, 2011 VT 34, ¶ 12 (holding that defendant's comments "did not necessarily communicate intent to inflict physical or other harm" (quotation omitted)). In applying this definition in each case, we determined the verbal statements at issue were insufficient to be considered threatening.

¶ 20.     In Miles, the defendant, while incarcerated at a state correctional facility, told a volunteer and an employee that he planned to kill someone named Bill Brown from Evergreen Counseling. 2011 VT 6, ¶ 7. We determined that these statements were insufficient to be considered threatening because the record was devoid of any evidence as to whether Bill Brown was a real person. In addition, we noted that the record more than suggested that the defendant was delusional when he made the purported threats. Id. ¶ 8. Given these facts, the defendant's

10

statements were not threatening because there was no finding they "represented an actual intent to put another in fear of harm or to convey a message of actual intent to harm a third party." Id.

¶ 21. In Sanville, the defendant, when threatened with eviction, angrily told his landlord that he would beat her up and said he would burn down the trailer he was being evicted from. 2011 VT 34, ¶¶ 3-5. The trial court determined that the defendant's statements qualified as threatening behavior within the meaning of his probation condition prohibiting violent or threatening behavior. Id. ¶ 5. On appeal, we reversed on notice grounds, explaining that although defendant's comments pushed the "boundaries of appropriate behavior for someone in the process of criminal rehabilitation," the condition was too vague to fairly inform the defendant that "such bluster would result in his loss of freedom." Id. ¶ 11.

¶ 22. Notwithstanding the fact that we resolved Sanville on notice grounds, we noted that the decision was consistent with State v. Bessette, a nonprecedential decision by a three-Justice panel. Id. ¶ 12. In Bessette, the panel held that a probationer engaged in threatening behavior by leaving a message on an individual's phone warning the individual to "look over [his] shoulder" because if the probationer gets him, "[i]ts going to be you and me, motherfucker. So hold onto that because you are going to be needing it." Bessette, 2008 WL 2766845, at *1 (first alteration in original). We concluded in Bessette that the phone call constituted threatening behavior because it indicated an intent "to stalk th[e] person for the purpose of injuring him or her." Id. at *2. In Sanville, we distinguished Bessette, explaining that the defendant's comment to his landlord "did not necessarily communicate intent to inflict physical or other harm." Sanville, 2011 VT 34, ¶ 12 (quotation omitted).

¶ 23. Finally, in Johnstone, a probation officer overheard the defendant tell his ex-girlfriend that his probation officer was "going to end up in a body bag." 2013 VT 57, ¶ 5. Assuming verbal statements could qualify as threatening behavior, we noted there was no "allegation that [the] defendant knew that the target of his statements was within earshot." Id.

11

¶ 17.  Citing Miles, we held that the defendant's statements could not qualify as threatening because there was no finding that the "defendant intended to put his probation officer in fear of harm or to convey a message of actual intent to harm." Id. ¶ 18.  In dicta, we noted that it "might be a very different case" if the State "had alleged that [the] defendant directed his comments to the probation officer, or even that he knew she was in earshot." Id.

¶ 24.  Informed by our decisions in Miles, Sanville, and Johnstone, we reaffirm that verbal statements constitute threatening behavior in the probation context when the statements are intended "to put another in fear of harm or to convey a message of actual intent to harm a third party." Johnstone, 2013 VT 57, ¶ 17 (quotation omitted).  This definition of threatening behavior is consistent with the dual purposes of probation—to rehabilitate defendants and protect society from defendants' potentially dangerous behavior.  Lockwood, 160 Vt. at 560, 632 A.2d at 663.  As the State aptly explained in its brief:

> Because probation conditions are a means of rehabilitating and encouraging probationers to engage in law-abiding behavior, an interpretation of "threating behavior" that covers all forms of threats, whether they are verbal, physical, or both[,] intuitively follows.  Such an interpretation allows for judicial intervention before a probationer's conduct transcends threatening words to the province of threatening actions or violent actions.

¶ 25.  We acknowledge that adopting this definition of threatening behavior in the probation context creates two separate definitions for the term.  In one context—probation—verbal statements can constitute threatening behavior, and in the other context—disorderly conduct— verbal statements as a matter of law cannot qualify as threatening behavior.  It is not unusual, however, for a term to have different meanings depending on the context.  See, e.g., State v. Bryan, 2016 VT 16, ¶¶ 21-23, 201 Vt. 298, 142 A.3d 204 (explaining that term "violent behavior" has been defined differently for purposes of bail and probation eligibility); State v. Waters, 2013 VT 109, ¶ 24, 195 Vt. 233, 87 A.3d 512 (observing that term "harassment" has "widely divergent definitions and understandings . . . in various contexts"); State v. Palmer, 94 Vt. 278, 281, 11 A. 436, 438

12

(1920) (acknowledging that word "willfully" is "given different definitions under different circumstances"). Given the different considerations that apply in probation and under the disorderly-conduct statute, it is necessary to adopt two different definitions for threatening behavior.

¶ 26. In this case, we conclude that defendant's statements to the corrections officer qualified as threatening behavior because defendant intended his statements to put the corrections officer in fear of harm to coerce the officer into not taking disciplinary action. When the corrections officer warned defendant that if he continued his behavior—i.e., pouring water out of his cell, being "verbally assaultive," and yelling demeaning expletives at the unit supervisor—his release date could be extended, defendant yelled loudly that he would "stab somebody" if he had to serve another six years. Defendant, addressing the corrections officer personally, added that he would have his gang go to the corrections officer's house and "get it done just like they do in New York," and the corrections officer could be found easily because corrections officers are "dumb" and put their names on their reports. By making these statements, defendant intended to put the corrections officer in fear of harm so that the corrections officer would not pursue disciplinary action against him. Further, these statements could be reasonably perceived as a threat by the corrections officer.

¶ 27. Defendant's statements to the corrections officer are distinguishable from those at issue in Miles, Sanville, and Johnstone. In Sanville, we recognized that the defendant was merely "mouthy and obnoxious" when he told his landlord he would burn down his trailer. Sanville, 2011 VT 34, ¶ 9-11. We noted that the landlord described defendant's conduct as " 'mouthing off' as he walked away from her." Id. ¶ 9. In this case, by contrast, defendant specifically threatened to find and harm the corrections officer. The corrections officer did not perceive defendant's statements as "mouthing off" but as a threat defendant may follow through on.

¶ 28. In Miles and Johnstone, we concluded that the defendants' verbal statements were not threatening because they made vague statements to third parties with no evidence that the

13

defendants intended for the targets of the threats to learn of them secondhand. Johnstone, 2013 VT 57, ¶¶ 17-18; Miles, 2011 VT 6, ¶¶ 7-8. In this case, however, defendant threatened to find and harm the corrections officer while he was face-to-face with the corrections officer. Defendant made it clear he was directing his statement at the corrections officer by telling the officer he could easily find him.

¶ 29. Finally, in Miles, we explained that the trial court failed to make a specific finding that the defendant intended his verbal statements "to put another in fear of harm or to convey a message of actual intent to harm a third party." Miles, 2011 VT 6, ¶ 8. In this case, however, the trial court specifically found that when defendant made his statements, he used a loud tone of voice, faced the corrections officer on the "other side of the cell door[,] and intentionally directed a verbal threat to him" to "cause fear of harm upon [defendant's] release from prison." Defendant did not challenge these findings on appeal.

¶ 30. Based on the foregoing, we conclude that defendant's verbal statements to the corrections officers qualified as threatening behavior under Condition N.

### B. Notice

¶ 31. Defendant argues that because Schenk defined threatening behavior to require "physical force or physical conduct which is immediately likely to produce the use of such force," 2018 VT 45, ¶ 32, he was not on notice that verbal statements could constitute threatening behavior. Furthermore, defendant submits that the facts underlying his guilty plea, which involved the physical act of threatening another with a knife, confirm that he understood threatening behavior to require some sort of underlying conduct. "Nothing in this record," defendant asserts, indicates "he had notice that 'threatening behavior' included speech."

¶ 32. "[D]ue process requires that a convicted offender be given fair notice as to what acts may constitute a violation of his probation, thereby subjecting him to loss of liberty." State v. Peck, 149 Vt. 617, 619, 547 A.2d 1329, 1331 (1988). Fair notice means that probation

14

conditions "are well-defined and transparent." State v. Stuart, 2018 VT 81, ¶ 13 n.5, 208 Vt. 127, 196 A.3d 306. Section 252(c) of Title 28 provides that an offender placed on probation "be given a certificate explicitly setting forth the conditions upon which he or she is being released." "A certificate satisfying this requirement may serve as adequate notice." State v. Katon, 168 Vt. 274, 277, 719 A.2d 430, 433 (1998). Fair notice of how the probation conditions are interpreted may "be provided by the instructions and directions given to defendant by his or her probation officer." Peck, 149 Vt. at 619-20, 547 A.2d at 1331; accord State v. Gleason, 154 Vt. 205, 216, 576 A.2d 1246, 1252 (1990) ("The instructions and directions given to a defendant by a probation officer or the court can also serve to provide fair notice.").

¶ 33. Here, it is undisputed that defendant "received, reviewed, and was subject to Condition N." The probation order, which defendant signed, provides that "I understand these conditions and I agree to follow them." Although a signed probation order may provide fair notice, Peck, 149 Vt. at 620, 547 A.2d at 1331, defendant argues that the probation order did not put him on notice that verbal statements qualified as threatening behavior because the order did not define threatening behavior and Schenk defined threatening behavior to require conduct.

¶ 34. In considering whether defendants have had fair notice of the meaning of probation conditions, we have recognized that "[t]he existence of multiple definitions of a common term does not render that term ambiguous or vague." State v. Danaher, 174 Vt. 591, 593-94, 819 A.2d 691, 695 (2002) (mem.); accord Bryan, 2016 VT 16, ¶ 23. In Danaher, the trial court found that the defendant violated a probation condition prohibiting contact with a child because the defendant placed himself in "physical proximity" to the child. 174 Vt. at 591, 819 A.2d at 692. On appeal, the defendant argued that he did not have notice of what "contact" meant because "the court used only one of the many definitions of 'contact' available" in the dictionary. Id. at 593, 819 A.2d at 695. The defendant asserted that other definitions of contact "did not contain the idea of 'proximity,' which was integral in the court's conclusion." Id. We affirmed, explaining that

15

"[e]xpecting mathematical certainty of language is unreasonable" and that it was "not unreasonable for the trial court to expect a person to understand that proximity is contained within the ordinary meaning of contact." Id. at 594, 819 A.2d at 695.

¶ 35.    Similarly, in Bryan, the trial court concluded that the defendant engaged in violent behavior in violation of Condition N—the same condition at issue here—by using his position of authority to coerce and sexually touch a minor. 2016 VT 16, ¶¶ 16-17. The defendant argued on appeal that we had previously held that sexual contact with a child was not violent behavior. Id. ¶ 19. We explained, however, that the decisions the defendant cited addressed "whether certain sexual offenses involving a child constituted violent crimes for purposes of determining bail eligibility." Id. Although we acknowledged that these cases "may not have, on their own, provided 'fair notice' to defendant that his actions would violate probation Condition N," we concluded that, where we had not interpreted the meaning of violent in Condition N, "the plain and ordinary meaning of 'violent' provided such notice." Id. ¶ 23.

¶ 36.    Danaher and Bryan make clear that context matters in considering whether defendants have adequate notice of the meaning of their probation conditions. The mere fact that common terms have "multiple definitions" does not mean that a defendant did not receive fair notice. Bryan, 2016 VT 16, ¶ 23; Danaher, 174 Vt. at 594, 819 A.2d at 695. The inquiry is whether, considering a term in the condition could have multiple meanings, the defendant received adequate notice of what would constitute a violation of the condition.

¶ 37.    In applying this principle here, we note that the application of Condition N to situations like this one where the defendant's behavior involves "primarily or exclusively speech" has caused numerous "interpretation issues that ha[s] plagued its enforcement." Johnstone, 2013 VT 57, ¶¶ 19-20 (Dooley, J., concurring). We have accordingly held in several instances that defendants did not have notice that their verbal statements could qualify as threatening behavior. See, e.g., Sanville, 2011 VT 34, ¶¶ 3, 9-11 (holding that defendant was not provided sufficient

16

notice that telling his landlord he would burn his trailer down could qualify as threatening behavior). Furthermore, these cases were decided before Schenk. Although Schenk, as discussed above, supra, ¶¶ 15-18, expressly decided only the meaning of threatening behavior under the disorderly-conduct statute, it certainly did not add clarity to the meaning of Condition N.

¶ 38. Notwithstanding these general observations, considering the entire context of defendant's underlying guilty plea, the other probation conditions besides Condition N, and the warnings provided by the employees at Southern State Correctional Facility, defendant received fair notice that verbal statements could constitute threatening behavior. First, defendant pleaded guilty to first-degree aggravated domestic assault. Although defendant is correct that that the facts underlying the plea included the physical act of being armed with a knife, defendant was also initially charged with two counts of disturbing the peace by phone, 13 V.S.A. § 1027(a). The information specifically provided that on July 24 and 27, 2017, defendant "with intent to terrify, intimidate, threaten, harass or annoy, made contact by means of a telephonic or other electronic communication with another and threatened to inflict injury or physical harm to the person or property of any person, in violation of 13 V.S.A. § 1027(a)." (Emphasis added.).

¶ 39. The affidavit accompanying the information specified that the basis for the two counts of disturbing the peace by phone was that defendant sent threatening messages to his ex-girlfriend and her family: "I believe [defendant] has committed the crime of Disturbing Peace by Use of Telephone or Other Electronic Communications to wit, [defendant] has sent numerous threatening messages through Facebook Messenger directed towards [his ex-girlfriend] and her family members." These statements included defendant promising that his ex-girlfriend's family "has never seen the storm that's about to come, . . . you did this to me, dead or in jail are my options I have, I have nothing because of you," and telling his ex-girlfriend that he "almost got shot the other night," he "could have died," and if he did it would have been his ex-girlfriend's fault because she put him in the situation. The charges of disturbing the peace by phone, which

17

involved sending threatening messages via Facebook Messenger, specifically informed defendant that threatening behavior does not necessarily require accompanying conduct. It is of no moment that these charges were later dismissed pursuant to the plea agreement.

¶ 40. Furthermore, after defendant pleaded guilty to first-degree aggravated domestic assault, the trial court, pursuant to 28 V.S.A. § 252(b)(18), imposed a series of probation conditions that were "reasonably related" to defendant's rehabilitation. In addition to prohibiting threatening behavior, the trial court imposed conditions requiring defendant to: attend mental-health counseling, if directed to do so by his probation officer; participate in violence counseling for anger management and/or domestic violence; and refrain from harassing or contacting the victim or her family. At the plea hearing, defendant signaled that he understood these conditions were related to his plea. Given that the conduct underlying defendant's guilty plea involved threatening his ex-girlfriend with a knife, and defendant understood that the trial court imposed numerous conditions related to this conduct that were aimed at his rehabilitation, defendant was on notice that threatening behavior included verbal threats. No reasonable defendant could have thought that the trial court would require him to attend mental-health and violence counseling and then at the same time permit him to make threats of violence so long as there was no physical conduct.

¶ 41. Third, whatever uncertainty defendant may have had regarding the meaning of threatening behavior was resolved by the warnings defendant received from the corrections officer and unit supervisor directly before he threatened the corrections officer. It is well-settled that a defendant may receive notice regarding what acts may constitute a violation of probation "by the instructions and directions given . . . by his or her probation officer." Peck, 149 Vt. at 619-20, 547 A.2d at 1331. As an extension of the principle, warnings from a corrections officer may also put defendants on notice of the conduct that can cause a probation violation. See Kane, 2017 VT 36, ¶¶ 5, 21 (explaining that the "directions provided by [defendant's] probation officers and

18

[community corrections officers] sufficiently warned [defendant] of the conduct that would cause a violation").[6]

¶ 42. Here, when defendant began pouring water out of his cell, the corrections officer warned defendant that his behavior would not be tolerated. Defendant became "verbally assaultive" and responded that he would be getting released at the end of July. The unit supervisor, however, informed defendant that he could violate his probation if he continued his behavior. Defendant responded flippantly to this warning from the unit supervisor by loudly yelling several expletives at her. The corrections officer then returned to defendant's cell door and specifically warned defendant that this behavior could result in additional disciplinary reports that could affect his release date.

¶ 43. Defendant was accordingly directly warned by the unit supervisor and the corrections officer that his behavior, which included verbally assaulting the corrections officer and yelling demeaning expletives at the unit supervisor, could affect his release date. Defendant's response to these warning indicate that he understood that his behavior could result in a violation of probation. Defendant told the corrections officers that he would not be held past his release date and that he would stab someone if he had to do another six years.

¶ 44. Considering that defendant was charged with sending threatening messages to his ex-girlfriend via Facebook Messenger; pleaded guilty to threatening his ex-girlfriend with a knife; understood that Condition N was "related" to this plea; and was specifically warned by the

_____

[6] A probation officer's instructions can provide a defendant notice of what a court-imposed condition means; they cannot expand the scope of the court's condition. See, e.g., State v. Galloway, 2020 VT 29, ¶¶ 13-14, __ Vt. __, __ A.3d. __ (explaining that probation officer crosses line between implementation and modification of probation condition when officer's interpretation of condition is inconsistent with its plain language); State v. Bostwick, 2014 VT 97, ¶¶ 16-22, 197 Vt. 345, 103 A.3d 476 (holding that defendant could not be found in violation of probation for failing to satisfy requirement imposed by his probation officer but not actually included in probation conditions imposed by court). Here, for the reasons set forth above, the correction officer's and unit supervisor's warnings that defendant's words and actions could violate Condition N was entirely consistent with the condition itself.

corrections officer and unit supervisor that his behavior could result in a violation of probation, defendant received adequate notice that verbal threats could qualify as threatening behavior. We accordingly affirm the trial court's conclusion that defendant violated probation Condition N.

Affirmed.

FOR THE COURT:

_____

Associate Justice