VERMONT SUPERIOR COURT

Windsor Unit
12 The Green
Woodstock VT 05091
802-457-2121
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 23-CV-03053

Darrell Boudro
      Petitioner

v.

Nicholas Deml
      Respondent

## Decision on Appeal

Between 2019 and 2021, petitioner Darrell Boudro was convicted four times for misdemeanor domestic-violence offenses and several times for alcohol-related driving offenses. He also violated his probation. After a global plea deal resolving both pending criminal charges and probation-violation complaints, he was sentenced in 2021 to a total sentence of one to four years to serve.

Petitioner served his minimum term and was released on community-supervision furlough. He violated his furlough conditions by engaging in unwanted contact with the victim of his domestic-violence offenses. This was a significant violation, and his furlough could have been interrupted or revoked on that basis. Instead, the case-staffing committee decided that he should be released again on community-supervision furlough upon approval of a plan for transitional housing.

Petitioner then enrolled in the transitional-housing program at Hartford Dismas House, but he became involved in a confrontation with another resident. According to a letter written by the program director, petitioner displayed an "aggressive nature" during the interaction, and made a verbal statement about the death of the other resident, together with a reference to the resident's national origin. Petitioner then told the same resident not to let him "catch you off property," which was understood as a reference to what could happen if an encounter were to occur at a time and place that was not supervised by surveillance cameras. The program director characterized these incidents as violations of the transitional-housing program's policies regarding violence and threats of violence, and terminated petitioner's participation in the program. Other than a reference to petitioner's "aggressive nature," the program director did not describe any physical conduct.

DOC returned petitioner to the correctional facility and issued a notice of suspension for the following violations: "termination from Hartford Dismas House," "not meeting program standards in attendance, participation and progress," and "committing or threatening an act that poses an articulable risk to the community, victim(s), a particular citizen, staff or self." Petitioner signed a form waiving his right to a hearing, and admitted that a preponderance of the evidence supported being found guilty of "NOS—termination from Hartford Dismas House (other condition)." Petitioner did not sign any forms

or waivers admitting responsibility for the other identified violations, and no hearing on those violations was held.

At petitioner's case staffing, the committee determined that petitioner's furlough eligibility should be revoked. As to the basis for this decision, the committee wrote that the revocation was "[d]ue to his risk scores and threatening behavior." The committee then cited the statutory and administrative criteria for revocation, but no other substantive findings were made, and no further explanation was given.

Petitioner seeks judicial review of this determination under 28 V.S.A. § 724. At the merits hearing held on September 27, 2023, there was considerable confusion about the basis for the agency's terse decision, including whether the finding of threatening behavior was based upon the incident at the transitional-housing program, or whether it instead related to petitioner's conduct towards his community correctional officer. In that regard, the confusion was rooted in the section of the determination labeled as the "narrative" of the violation, which focused upon petitioner's conduct towards the community correctional officer, and which did not include any specific information about the incident at the transitional-housing program other than a sentence that asserted that he had "engaged in verbal and physical altercation" at the transitional-housing program and that he had "threatened to kill another resident," and that his program residency had been "terminated."

Even after it was clarified that the determination was based upon the incident at the transitional-housing program, confusion persisted about whether the agency's decision was based upon the fact that petitioner was terminated from the transitional-housing program (for what the program director characterized as threatening behavior), or whether the decision was instead based upon a finding that the petitioner's behavior had been threatening. If the former, petitioner questions whether the violation was significant enough to support the sanction imposed. If the latter, petitioner contends that the finding is not supported by the evidence.

A court may review case-staffing determinations in which an offender's community-supervision furlough status is "revoked or interrupted for 90 days or longer for a technical violation." 28 V.S.A. § 724(c)(1). The court's role is to conduct a "de novo review of the record" to determine whether DOC "abused its discretion" in imposing that sanction. 28 V.S.A. § 724(c)(1)–(2). Although the exact nature of this review is complicated by references to several distinct concepts of administrative law, along with allocations of the burden of proof and presumptions, the basic idea is to review whether these case-staffing decisions are based on permissible criteria and whether there is a satisfactory explanation for the agency's decision. 28 V.S.A. § 724(c)(1)–(2) & (d); 3 Koch, Administrative Law and Practice 3d §§ 9:21–9:27.

Here, the case-staffing determination does not adequately explain the basis for the agency's decision. It is not clear whether the revocation was based upon the fact that petitioner was terminated from the transitional-housing program, or whether the decision was instead based upon a finding that petitioner engaged in threatening behavior. If the former, the court understands the factual basis for the finding, because that is the violation that petitioner admitted, but the decision does not explain the basis for a conclusion that such a violation would be "significant" enough to warrant revocation within the meaning of the agency's own policies. If the latter, the court does not understand the factual basis for the finding, because petitioner never admitted that violation, and no hearing on that alleged violation was ever held. It is not clear what evidence would support that finding, nor whether petitioner

was ever provided with an opportunity to be heard as to that evidence, nor whether the committee considered relevant legal standards when making the substantive determination that threatening behavior occurred, e.g., *State v. Harwood*, 2020 VT 65, ¶ 24, 212 Vt. 592; *State v. Johnstone*, 2013 VT 57, ¶ 5, 194 Vt. 230; *State v. Miles*, 2011 VT 6, ¶ 8, 189 Vt. 564 (mem.); *State v. Bessette*, No. 2007-279, 2008 WL 2766845 (Vt. June 2008) (unpub. mem.). To the extent that the incident is referenced in the violation narrative, it is described in conclusory terms as having included a physical component, which is not otherwise reflected in the record.

In other words, the agency's explanation of its decision is too terse to permit meaningful judicial review. The court is not sure what facts the agency found to have occurred, nor whether those facts are supported by the evidence, nor whether the evidence was assessed in a manner consistent with procedural due process. In the absence of that information, the court cannot review whether this re-incarceration is consistent with the policies expressed by § 724. For these reasons, the case-staffing determination is reversed, and the matter is remanded to the agency for a new determination.

Electronically signed on Friday, October 27, 2023 pursuant to V.R.E.F. 9(d).

Vermont Superior Court
Filed 10/30/23
Windsor Unit

H. Dickson Corbett
Superior Court Judge